[Civ. No. 47500. First Dist., Div. Four. Aug. 13, 1982.]

JAMES F. BOCCARDO et al., Plaintiffs and Appellants, v. SAFEWAY STORES, INC., et al., Defendants and Respondents.

COUNSEL

Jerrold N. Offstein, Michael E. Dietrick, Jane C. Van Praag, Michael Weisberg and Scott & Kolb for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Richard W. Odgers, C. Douglas Floyd, Brian D. Bellardo, Walter R. Allan, Kevin M. Fong, Hawley, Troxell, Ennis & Hawley, Jess B. Hawley, Arnold & Porter, Alexander E. Bennett, McCutchen, Doyle, Brown & Enersen, J. Thomas Rosch, Kemp, Smith, White, Duncan & Hammond, Link Beck, Mitchell, Silberberg & Knupp, Roy Lewis Shults, Wilmer, Cutler & Pickering, C. Loring Jetton, Jr., Donahue, Gallagher, Thomas & Woods, Robert N. Wood, McKenna & Fitting, McKenna, Conner & Cuneo, Les J. Weinstein, Munger, Tolles & Richershauser, Ronald L. Olson, McDermott, Will & Emery, Theodore A. Groenke, Morgan, Lewis & Bockius, Benjamin M. Quigg, Jr., Kenneth Wright, Stein, Rosen & Ohrenstein, David A. Rosen, Jones, Waldo, Holbrook & McDonough, Donald B. Holbrook, Michael Murphy, Cahill, Gordon & Reindel, Henry G. Bisgaier, Brobeck, Phleger & Harrison, Charles E. Hanger, Bodkin, McCarthy, Sargent & Smith, Timothy J. Sargent, Bedell, Bedell, Dittmar & Zehmer, Charles P. Pillans III, Heller, Ehrman, White & McAuliffe and Stephen V. Bomse for Defendants and Respondents.

OPINION

CHRISTIAN, J.—James F. Boccardo and others appeal from judgments dismissing an antitrust action brought by them against Safeway Stores, Inc. and others, respondents in this appeal.

Boccardo and many cattlemen and feed lot operators sued respondents, operators of retail food chain stores, in the United States District Court (Northern District of California) (*Boccardo I*). Seeking damages under section 4 of the Clayton Act (15 U.S.C. § 15), plaintiffs-appellants charged that respondents combined to fix at artificially low levels the price at which beef is purchased from meat packers, and ultimately from cattle ranchers and feeders. (See *In re Beef Industry Antitrust*

*Litigation* (5th Cir. 1979) 600 F.2d 1148, 1153, cert. den. 449 U.S. 905 [66 L.Ed.2d 137, 101 S.Ct. 280].) The Judicial Panel on Multidistrict Litigation consolidated this federal lawsuit with seven other lawsuits commenced in six other federal districts, and transferred all the cases to the United States District Court for the Northern District of Texas. (See *In re Beef Industry Antitrust Litigation* (J.P.M.L. 1976) 419 F.Supp. 720.)

The district court dismissed all the consolidated actions with prejudice for failure to state a claim upon which relief could be granted. Plaintiffs in all of the other consolidated lawsuits appealed to the United States Court of Appeals. (*In re Beef Industry Antitrust Litigation, supra*, 600 F.2d 1148, 1155.) The present appellants, however, did not challenge the judgment of dismissal; instead, they moved the federal court for leave to file a second amended complaint to allege antitrust violations under the Cartwright Act. (Bus. & Prof. Code, § 16700 et seq.) The district court denied the motion.

Appellants then commenced the present action in the superior court based on the California statute. (*Boccardo II.*) The complaint in *Boccardo II* named the same plaintiffs and defendants (excluding Allied Supermarkets, Inc.) as did the amended federal complaint, and made identical allegations of price-fixing and monopolization. The superior court sustained without leave to amend a general demurrer by respondents on the ground of res judicata, and dismissed the action. The present appeal followed.

Respondents contend that the district court's dismissal of appellants' federal antitrust claims bars the superior court from entertaining appellants' state law causes of action. California courts must give full faith and credit to the judgment of a federal court (Code Civ. Proc., § 1908); therefore, this court must give the same effect to the federal dismissal as would be accorded to it in a federal court. (*Levy* v. *Cohen* (1977) 19 Cal.3d 165, 173 [137 Cal.Rptr. 162, 561 P.2d 252], cert. den. 434 U.S. 833 [54 L.Ed.2d 94, 98 S.Ct. 119].)

(a) Was the dismissal of *Boccardo I* a final judgment on the merits?

A final judgment in favor of a defendant ordinarily operates as a complete bar to further litigation on the same cause of action. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) To determine whether *Boccardo II* was barred by res judicata,

this court must first decide whether the dismissal of *Boccardo I* was a final judgment on the merits.

■ A dismissal for failure to state a claim (Fed. Rules Civ. Proc., rule 12(b)) is ordinarily treated as an adjudication on the merits. (*Bell v. Hood* (1946) 327 U.S. 678, 682 [90 L.Ed. 939, 943, 66 S.Ct. 773, 13 A.L.R.2d 383]; *Federated Department Stores, Inc.* v. *Moitie* (1981) 452 U.S. 394, 399, fn. 3 [69 L.Ed.2d 103, 109, 101 S.Ct. 2424]; *Bobby Jones Garden Apartments, Inc.* v. *Suleski* (5th Cir. 1968) 391 F.2d 172.) Such a dismissal bars further litigation of the claim when it determines "'the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form.'" (1B Moore's Federal Practice, ¶ 0.409[1] at p. 1003.) Stated another way, "[t]he judgment is on the merits if it is based on the substantive law, and determines that the plaintiff has no cause of action.... The judgment is not on the merits if it is based merely on rules of procedure, and determines only that the plaintiff is not entitled to recover in the particular action; e.g., dismissal for lack of jurisdiction, or judgment after special demurrer sustained." (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 168, p. 3311 [italics deleted]; Rest. Judgments, § 49.)

■ The basis for the dismissal of *Boccardo I* was the absence of any allegation that appellants sold cattle directly to the respondent food chains. The district court apparently interpreted the rule of *Illinois Brick Co.* v. *Illinois* (1977) 431 U.S. 720 [52 L.Ed.2d 707, 97 S.Ct. 2061], as restricting the right of action under section 4 of the Clayton Act to parties who have dealt directly with alleged antitrust law violators. (*In re Beef Industry Antitrust Litigation, supra,* 600 F.2d 1148, 1155.) Appellants contend that because the *Illinois Brick* holding is a rule of standing, and therefore a procedural bar, the dismissal of *Boccardo I* was not a judgment on the merits and cannot preclude a second action in the state courts. But the holding of *Illinois Brick* is not a rule of standing. In that case the United States Supreme Court held that a purchaser of goods who is indirectly affected by an alleged price-fixing conspiracy has no cause of action against the members of that alleged conspiracy. (*Illinois Brick Co.* v. *Illinois, supra,* 431 U.S. 720, 735 [52 L.Ed.2d 707, 718].) The court noted that "we do not address the standing issue, except to note, as did the Court of Appeals below ... that the question of which persons have been injured by an illegal overcharge for purposes of § 4 [of the Clayton Act] is analytically distinct from the question of which persons have sustained injuries too remote to give

them standing to sue for damages under § 4." (*Id.*, at p. 728, fn. 7 [52 L.Ed.2d at p. 714].) Thus, the court upheld the Seventh Circuit's view that the failure to show that antitrust violations caused plaintiffs' injuries was not a deficiency of standing. "Rather, the question is one of fact [citations], and any decision thereon is an adjudication on the merits." (*State of Ill.* v. *Ampress Brick Co., Inc.* (7th Cir. 1976) 536 F.2d 1163, 1166, revd. on other grounds, 431 U.S. 720 [52 L.Ed.2d 707, 97 S.Ct. 2061].) In applying the rule of *Illinois Brick*, therefore, the federal court based its dismissal not on lack of standing but on a substantive determination that appellants had no cause of action under section 4 of the Clayton Act. Thus the dismissal of *Boccardo I* was a judgment on the merits; subject to other considerations which we shall discuss it may operate to bar further litigation on the same cause of action. (*Slater* v. *Blackwood, supra*, 15 Cal.3d 791, 795.)

(b) Are the federal claim in *Boccardo I* and the state law claim in *Boccardo II* a single cause of action?

█ Appellants could not be barred from suing in the superior court unless *Boccardo I* and *Boccardo II* are based on the same cause of action. But res judicata precludes piecemeal litigation by splitting a single cause of action. (*Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891, 894 [151 P.2d 846].) It also precludes relitigation of the same cause of action on a different legal theory or for different relief. (*Slater* v. *Blackwood, supra*, 15 Cal.3d 791, 795; *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638-639 [134 P.2d 242].)

For the purposes of res judicata, California defines a cause of action according to the "primary right" theory: the violation of a single primary right constitutes a single cause of action even though it may entitle the injured party to diverse forms of relief. (*Wulfjen* v. *Dolton, supra*, 24 Cal.2d 891, 895-896.) The primary right alleged to have been violated in the instant case is appellants' right to be free from economic injury caused by an unlawful conspiracy to fix meat prices. The federal claim in *Boccardo I* and appellants' present state law claim are based on the same facts and the same harm. A "'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant" (*Slater* v. *Blackwood, supra*, 15 Cal.3d 791, 795); therefore, the two claims constitute a single cause of action.

(c) Does the dismissal of *Boccardo I* preclude further litigation on the issue of liability under the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.)?

██ In *Boccardo I*, the federal court dismissed the action solely on the basis of appellants' lack of direct dealing with respondents. The district court made no findings of fact regarding the existence of a price-fixing conspiracy. Unlike the Clayton Act, the Cartwright Act does not require a direct relationship between plaintiffs and those alleged to have violated the state antitrust laws. (Bus. & Prof. Code, § 16750, subd. (a).)[1] Should the issue of liability under the state statute be precluded from litigation in the state courts, even though the only issue previously litigated was the absence of direct dealings between the parties? "A final judgment on the merits between parties who in law are the same operates as a bar to a subsequent action upon the same cause of action, settling not only every issue that was raised, but also every issue that might have been raised in the first action." (*Olwell* v. *Hopkins* (1946) 28 Cal.2d 147, 152 [168 P.2d 972]; *Chicot County Dist.* v. *Bank* (1940) 308 U.S. 371, 378 [84 L.Ed. 329, 334, 60 S.Ct. 317].) We must next determine whether appellants' claims under the Cartwright Act could have been litigated in the federal court.

(d) Did the federal court have the power to exercise pendent jurisdiction over appellants' state law claim?

A claim under the Cartwright Act does not state a substantial federal question upon which federal subject matter jurisdiction can be based. (*State of Cal.* v. *California & Hawaiian Sugar Co.* (9th Cir. 1978) 588 F.2d 1270, cert. den. 441 U.S. 932 [60 L.Ed.2d 660, 99 S.Ct. 2052].) ██ Absent complete diversity of citizenship among the parties, the federal court ordinarily has no jurisdiction over claims based on state law. (28 U.S.C. § 1331; *Bankers' Trust Co.* v. *Tex. & Pac. Ry.* (1916) 241 U.S. 295, 299 [60 L.Ed. 1010, 1012, 36 S.Ct. 569].) An exception to this rule exists where a claim based on state law forms a separate but parallel ground for relief also sought in a substantial claim based on federal law. In such a case, the federal court can exercise "pendent jurisdiction" over the state law claim. (*Mine Workers* v. *Gibbs*

---

[1]Business and Professions Code section 16750, subdivision (a): "Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover three times the damages sustained by him, and shall be awarded a reasonable attorneys' fee together with the costs of the suit.

"Such action may be brought by any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, *regardless of whether such injured person dealt directly or indirectly with the defendant.*" (Italics added.)

(1966) 383 U.S. 715, 725 [16 L.Ed.2d 218, 227, 86 S.Ct. 1130]; *Hurn v. Oursler* (1933) 289 U.S. 238 [77 L.Ed. 1148, 53 S.Ct. 586].)

For pendent jurisdiction to apply, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court. [Citation.] The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." (*Mine Workers v. Gibbs, supra*, 383 U.S. 715, 725 [16 L.Ed.2d 218, 227-228]; italics in original.)

Where a federal court has exercised pendent jurisdiction, it can proceed to dispose of the state claim even after dismissal of the federal claim. As the United States Supreme Court explained: "We are not willing to defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim." (*Rosado v. Wyman* (1970) 397 U.S. 397, 405 [29 L.Ed.2d 442, 451, 90 S.Ct. 1207]; see *Florida East Coast Railway Company v. United States* (5th Cir. 1975) 519 F.2d 1184, 1196-1197.)

■ Appellants contend that their federal claim was "flimsy and insubstantial" and that the federal court would therefore have lacked the power to exercise pendent jurisdiction over the state claim. A federal claim is substantial if it is not so unsound in the light of previous judicial decisions "as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." (*Hannis Distilling Co. v. Baltimore* (1910) 216 U.S. 285, 288 [54 L.Ed. 482, 483, 30 S.Ct. 326].) Although appellants' complaint in *Boccardo I* was dismissed for failure to state a claim, the Clayton Act claim was not so clearly foreclosed by *Illinois Brick* or other previous judicial decisions as to be unsubstantial for federal jurisdictional purposes. When the instant complaint was filed it was unclear whether the *Illinois Brick* rule applied to sellers who were indirectly affected by antitrust violations. (*In re Beef Industry Antitrust Litigation, supra*, 600 F.2d 1148, 1157-1159.)

Substantiality is further shown by the United States Court of Appeals' reversal of the other consolidated cattlemen's actions, on the

ground that the complaints stated claims which were within the "cost-plus contract" exception to the rule of *Illinois Brick.* (*Id.*, at pp. 1163-1167.) Because it was based on the same facts, appellants' claim also fell within that exception. There was room for controversy as to whether appellants' claim under the Clayton Act would lie; therefore, that claim involved a substantial federal question. The federal and state claims shared a "common nucleus of operative fact" and were such as would ordinarily be joined in a single action; the federal court would have had the power to exercise pendent jurisdiction to determine the state law claim had it been joined as a separate but parallel ground for relief. (*Mine Workers* v. *Gibbs, supra*, 383 U.S. 715, 725 [16 L.Ed.2d 218, 227].) It remains to be determined whether in actuality appellants could have obtained federal adjudication of their Cartwright Act claims.

(e) Was the denial of appellants' motion to file an amended complaint in *Boccardo I* a discretionary refusal by the federal court to exercise pendent jurisdiction?

■ After the federal court had ordered *Boccardo I* dismissed with prejudice appellants sought leave to amend their federal complaint to state a claim under the Cartwright Act; the motion was denied. Appellants now suggest that the denial of this motion was, in effect, a discretionary refusal by the district court to exercise pendent jurisdiction over the state claims; on that basis it is argued that federal adjudication of the Cartwright Act claim was never available in this case. Although a federal court has the power to exercise pendent jurisdiction over a state claim, the exercise of that jurisdiction is entirely discretionary. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them [citation]. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state *claims may be dismissed* without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which

the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong . . . . Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed. Rule Civ. Proc. 42 (b). If so, jurisdiction should ordinarily be refused." (*Mine Workers* v. *Gibbs, supra*, 383 U.S. 715, 726-727 [16 L.Ed.2d 218, 228-229].)

■ Discretionary refusal by a federal court to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court. (*Calderone Enter. Corp.* v. *United Artists Theatre Circuit* (2d Cir. 1971) 454 F.2d 1292, 1297, cert. den. 406 U.S. 930 [32 L.Ed.2d 132, 92 S.Ct. 1776].) If the district court in *Boccardo I* based its denial of appellants' motion to amend on a discretionary refusal to entertain the action, the final judgment is arguably not res judicata in the present action.

■ Although the record does not establish explicitly the reason for the federal court's denial of appellants' motion to amend, the circumstances of the case strongly indicate that the denial was not a discretionary refusal to exercise pendent jurisdiction but that the court denied the motion as untimely without reaching the pendent jurisdiction question. The prior order dismissing the federal action did not contemplate the doing of any further act; it operated as a final judgment in the action notwithstanding the later entry of a formal judgment of dismissal. (*Lone Star Motor Import, Inc.* v. *Citroen Cars Corp.* (5th Cir. 1961) 288 F.2d 69, 73, fn. 5.) The judgment in *Boccardo I* was thus final as of the date of entry of the order of dismissal (Fed. Rules Civ. Proc., rule 58; *O'Brien* v. *Harrington* (D.C.Cir. 1956) 233 F.2d 17, 18-19); appellants' motion to amend was made after the entry of that final judgment.

Appellants contend that the December 19, 1977, "order" of the district court did not operate as a final judgment because of the federal requirement that every judgment be "set forth on a separate document." (Fed. Rules Civ. Proc., rule 58.) They contend that the order was merely an opinion or memorandum of decision, and was not effective until the later document, labeled "judgment," was executed on December 28, 1977. The "separate document" requirement of rule 58 is "mechanically applied in order to avoid new uncertainties as to the date on which a judgment is entered." (*United States* v. *Indrelunas* (1973) 411 U.S.

216, 221-222 [36 L.Ed.2d 202, 207, 93 S.Ct. 1562].) A judgment which does not meet this requirement is ineffective. (Fed. Rules Civ. Proc., rule 58.) The rule does not, however, require two documents in every case. "Rule 58 applies where it is uncertain whether a final judgment has been entered, as where a trial judge writes an opinion or memorandum providing only the basis for the entry of judgment, but containing apparently directive or dispositive words such as 'defendant's motion for summary judgment is granted.' In such a situation, a judgment must be set out on a document separate from the opinion or memorandum." (*United States* v. *Clearfield State Bank* (10th Cir. 1974) 497 F.2d 356, 358, fn. omitted.) Thus, in *Clearfield*, an order granting summary judgment was held to satisfy the rule because it was itself a separate document. (*Id.*, at p. 359.) If the order of December 9, 1977, sets forth an operative final judgment it will satisfy the separate document requirement. In determining whether an order is intended to be a final judgment, federal courts look to the intention of the trial judge. (*Id.*, at p. 358; *United States* v. *Evans* (10th Cir. 1966) 365 F.2d 95, 97.) Although the district judge stated in the order the reason for the dismissal of appellants' claim, the language of the document appears to be an unequivocal statement of an intention that the order be presently effective. The order states that "[i]t is further ordered that [*Boccardo I* is] dismissed with prejudice for failure to state a claim upon which relief can be granted." In his subsequent order denying appellants' leave to amend the judge observed that the amended complaints were "postdismissal," further indicating that the judge intended the prior document, entered before appellants' motion for leave to amend, to be the final appealable judgment in that action.

The untimeliness of the motion is also apparent from other circumstances. The motions for dismissal based on *Illinois Brick Co.* v. *Illinois, supra*, 431 U.S. 720, were filed on July 17, 1977; the district court ruled on the motions in October 1977. (*In re Beef Industry Antitrust Litigation, supra*, 600 F.2d 1148, 1161.) As the Court of Appeals for the Fifth Circuit noted, none of the plaintiffs in the consolidated cattlemen's actions attempted to amend their complaints until after the December 9 entry of its order. (*Id.*, at p. 1162.) "The district court did not abuse its discretion in denying the post-judgment motions for leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted 'when justice so requires'. The Supreme Court has said that motions to amend may properly be denied when there has been undue delay in moving for leave to amend. *Foman* v. *Davis*, 1962, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222. The

plaintiffs have offered no credible explanation for their failure to move for leave to amend until nearly five months after the defendants moved for dismissal on the basis of *Illinois Brick*. Absent any apparent justification for this delay, we cannot hold that the district court abused its discretion. We emphasize, moreover, that these motions were made after the court's entry of the dismissal orders .... " (*Ibid.*; fn. deleted.)

A federal court may allow amendment of a complaint after entry of final judgment when "justice so requires" (Fed. Rules Civ. Proc., rule 15(a); *Foman* v. *Davis* (1962) 371 U.S. 178, 182 [9 L.Ed.2d 222, 225-226, 83 S.Ct. 227]), but only after it first alters, vacates or sets aside the judgment. (*Roque* v. *City of Redlands* (C.D.Cal. 1978) 79 F.R.D. 433, 436; *Cassell* v. *Michaux* (D.C.Cir. 1956) 240 F.2d 406, 408; Wright & Miller, Federal Practice & Procedure, § 1489, at p. 445.) The record shows merely a bare motion to amend the complaint without an accompanying motion to vacate or amend the judgment. For this reason, the district court's denial of the motion to amend inferably was based on the untimeliness of that motion, and cannot be construed as reflecting a discretionary refusal of the court to exercise pendent jurisdiction.

(f) Is it clear that the federal court would have declined as a matter of discretion to exercise pendent jurisdiction over appellants' Cartwright Act claim had the latter been joined in *Boccardo I*?

The federal court never determined the appropriateness of the exercise of pendent jurisdiction over appellants' Cartwright Act claims; nevertheless, the action the court would have taken had it had the opportunity to consider the issue bears on the preclusive effect of dismissal of *Boccardo I*. If timely action by appellants would not have secured to them access to a federal adjudication on the merits of their state claim it would be unjust to give the federal dismissal res judicata effect as to the state claims. In *Merry* v. *Coast Community College Dist.* (1979) 97 Cal.App.3d 214 [158 Cal.Rptr. 603], the court considered the effect of the dismissal by the federal court of a federal civil rights suit on a subsequent action for the rescission of a contract brought in the superior court. Both the federal lawsuit (*Merry II*) and the state action (*Merry III*) were based on the same operative facts. The federal court had dismissed the prior action because the plaintiff had failed to state a claim upon which relief could be granted under the United States Constitution or federal statutes. Because plaintiff's federal claim was "flimsy and insubstantial," the *Merry* court determined that the federal court in

*Merry II* would have declined as a matter of discretion to exercise pendent jurisdiction over the state claim. For this reason, the court held that the prior dismissal of the federal claim did not preclude subsequent litigation of the state claim in the superior court.

In determining the res judicata effect of the federal dismissal, the appellate court adopted the test set forth in the Restatement of Judgments: "'A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.'

"Illustration 10 under comment 'e' gives the following example: 'A commences an action against B in a federal court for treble damages under the federal antitrust laws. After trial, judgment is entered for the defendant. A then seeks to commence an action for damages against B in a state court under the state antitrust law grounded upon substantially the same business dealings as had been alleged in the federal action. Even if diversity of citizenship between the parties did not exist, the federal court would have had "pendent" jurisdiction to entertain the state theory. Therefore unless it is clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction (for example, because the federal claim, though substantial, was dismissed in advance of trial), the state action is barred.'" (*Merry v. Coast Community College Dist., supra*, 97 Cal.App.3d 214, 229, quoting Rest. Judgments (2d Tent. Draft No. 5, p. 99 et seq.) § 61.1, com. e.)

Respondents contend that the Restatement rule applies only where it was clear at "the outset" of the litigation that the federal court would have declined as a matter of discretion to exercise pendent jurisdiction over the state claims. As authority for this proposition they cite Justice Blackmun's concurring opinion in *Federated Department Stores, Inc. v. Moitie, supra*, 452 U.S. 394, at pages 402-404 [69 L.Ed.2d 103, at pages 111-112]. Respondents in that case brought a Cartwright Act antitrust action in the California superior court after the earlier dis-

missal of respondents' Clayton Act claims based on the same operative facts. The action was removed to the United States District Court. When at a later stage the case was before the United States Supreme Court, Justice Blackmun in a concurring opinion stated that respondent's failure to allege their state claims in the prior federal action barred further litigation in the second action: "Since there is no reason to believe that it was clear at the outset of this litigation that the district court would have declined to exercise pendent jurisdiction over the state claims, respondents were obligated to plead those claims if they wished to preserve them." (*Id.*, at p. 404 [69 L.Ed.2d at p. 112], citing Rest. Judgments (2d Tent. Draft No. 5, p. 99 et seq.) § 61.1, com. e.; see also *id.*, Brennan, J., dis. opn. at pp. 404-411 [69 L.Ed.2d at pp. 112-117].)

Respondents in the present case argue that because it could not have been clear at the outset of *Boccardo I* that pendent jurisdiction would not have been exercised, *Boccardo II* was barred by res judicata. Notwithstanding Justice Blackmun's dictum, however, the Restatement rule as applied by the court in *Merry* implicitly requires that the court in the subsequent action make a *post hoc* determination of how the federal court would have exercised its discretion. As both *Merry* and the present case demonstrate, this issue most frequently arises when the federal court has disposed of the prior action by pretrial dismissal or summary judgment. The interpretation urged by respondents would require the plaintiff at the outset of his federal action to predict whether his claim would be dismissed before trial, and given the probability of such a dismissal, whether the pendent state claims would also be dismissed. Charging the litigant with this determination at the beginning of litigation would violate the Restatement rule because it could hardly be clear, prior to the federal court's dismissal of the federal claim, whether the pendent state claims would be dismissed or retained. The rule would thus be rendered superfluous because litigants would effectively be required always to raise their state claims in the federal action or be precluded from further litigation of those claims in the state court.

Rather than qualify the Restatement rule in the manner urged by appellants, a better course might be to require without exception that the litigant in a federal action join all state claims over which the federal court would have had the power to exercise pendent jurisdiction. Such a rule would eliminate the guesswork necessarily involved in determining how the federal court would have exercised its discretion because the

federal court in each case would have had the opportunity to determine whether pendent jurisdiction should be imposed. A determination of how another court would exercise its discretion is bound to be speculative. This is especially true where the discretionary decision involves the exercise of pendent jurisdiction which is based on considerations of judicial economy, the federal court's ability to rule on issues of state law, the likelihood of jury confusion, and other matters difficult to assess. (See *Mine Workers* v. *Gibbs, supra*, 383 U.S. 715, 725 [16 L.Ed.2d 218, 227].)

The Restatement rule may also tend to encourage litigants to split their causes of action by not joining their state claims in the original federal action. As one federal court stated: "We fail to discern the unfairness in requiring a plaintiff to join all theories of relief in a single proceeding. The uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judidicial resources." (*Harper Plastics* v. *Amoco Chemicals Corp.* (7th Cir. 1981) 657 F.2d 939, 946; see also *Federated Department Stores, Inc.* v. *Moitie, supra*, 452 U.S. at pp. 403-404 [69 L.Ed.2d at pp. 111-112] (Blackmun, J. conc. opn.); *Wulfjen* v. *Dolton, supra*, 24 Cal.2d 891, 895.)

Although we consider the Restatement rule as applied in *Merry* v. *Coast Community College Dist., supra*, 97 Cal.App.3d 214, to be open to doubt, we nevertheless apply it in the present case so as to avoid a conflict with the *Merry* holding. Accordingly, we must proceed to determine whether it is clear that the federal court in *Boccardo I* would have declined as a matter of discretion to exercise pendent jurisdiction.

The prior federal action, *Boccardo I*, was dismissed prior to trial. This increases the probability that the federal court would have declined to retain jurisdiction to adjudicate the state claims. (See *Mine Workers* v. *Gibbs, supra*, 383 U.S. 715, 726 [16 L.Ed.2d 218, 228].) Although a federal court is not required to dismiss a pendent state claim following dismissal of the federal action on the merits (*Rosado* v. *Wyman, supra*, 397 U.S. 397, 404-405 [25 L.Ed.2d 442, 451-452]), many courts have held that where the federal claim has been disposed of by pretrial dismissal or summary judgment before there has been substantial expenditure of the court's time and energy on the case, proper exercise of discretion requires dismissal of the state claim without prejudice to the plaintiff's right to litigate them in a state forum.

(See *Wham-O-Mfg. Co.* v. *Paradise Manufacturing Co.* (9th Cir. 1964) 327 F.2d 748, cited with approval in *Mine Workers* v. *Gibbs, supra,* 383 U.S. at p. 726, fn. 16 [16 L.Ed.2d at p. 228]; *Nolan* v. *Meyer* (2d Cir. 1975) 520 F.2d 1276, 1280, cert. den. 423 U.S. 1034 [46 L.Ed.2d 408, 96 S.Ct. 567]; *Calderone Enter. Corp.* v. *United Artists Theatre Circuit, supra,* 454 F.2d 1292, 1295; *Nash & Associates, Inc.* v. *Lum's of Ohio, Inc.* (6th Cir. 1973) 484 F.2d 392.) The Ninth Circuit has consistently followed this view. (*Hodge* v. *Mountain States Tel. & Tel. Co.* (9th Cir. 1977) 555 F.2d 254; *Toensing* v. *Brown* (9th Cir. 1975) 528 F.2d 69, 72; *Walling* v. *Beverly Enterprises* (9th Cir. 1973) 476 F.2d 393.) A number of decisions have upheld the exercise of pendent jurisdiction after the pretrial dismissal of the federal claim. (*In re Carter* (5th Cir. 1980) 618 F.2d 1093, 1104-1105, cert. den. 450 U.S. 949 [67 L.Ed.2d 378, 101 S.Ct. 1410]; *Brunswick* v. *Regent* (5th Cir. 1972) 463 F.2d 1205.) Neither line of cases can, however, properly be read as creating a hard and fast rule governing the present situation. The underlying policy of pendent jurisdiction is the furtherance of judicial economy (see *Mine Workers* v. *Gibbs, supra,* 383 U.S. at p. 726 [16 L.Ed.2d at p. 228]; *Rosado* v. *Wyman, supra,* 397 U.S. at p. 405 [25 L.Ed.2d at p. 451]); accordingly, cases which upheld the federal court's adjudication of state claims after dismissal of related federal claims did so only when the time and energy of the lower court had not been substantially expended. (See *Wham-O-Mfg. Co.* v. *Paradise Manufacturing Co., supra,* 327 F.2d at p. 753.) In cases in which the trial court had expended considerable time on the litigation, the federal courts were more willing to permit the adjudication of both state and federal claims in a single action. Thus, where there had been a substantial number of hearings and argument prior to the dismissal of the federal claim (*Rosado* v. *Wyman, supra,* 397 U.S. at pp. 403-404 [25 L.Ed.2d at pp. 450-451]), where the action had been removed to federal court after trial and appeal in a state court (*In re Carter, supra,* 618 F.2d 1093), or merely after the completion of discovery (*Meyer* v. *California and Hawaiian Sugar Co.* (9th Cir. 1981) 662 F.2d 637, 640), it has been held permissible for the district court to retain jurisdiction over the state law claim. (See also *State of Arizona* v. *Cook Paint & Varnish Co.* (9th Cir. 1976) 541 F.2d 226, 227-228, cert. den. 430 U.S. 915 [51 L.Ed.2d 593, 97 S.Ct. 1327].)

In *Boccardo I,* a substantial amount of time and energy had been expended prior to the dismissal of the federal complaint. Appellants' action was transferred from the Northern District of California to the Northern District of Texas where the parties engaged in extensive pre-

trial proceedings. By the time the action was dismissed, a period of over eight months had passed since the filing of appellants' complaint. Given the investment of time by the two district courts, and effort involved in transfer of the case to the federal court in Texas, judicial economy would not have been served by a dismissal of a pendent state claim.

The present case is distinguishable from *Merry* in that no state action was pending at the time *Boccardo I* was dismissed, a fact which in *Merry* added to the probabilty that the federal court would have declined to adjudicate the state claims. (*Merry* v. *Coast Community College Dist., supra,* 97 Cal.App.3d 214, 226; see *T. B. Harms Company* v. *Eliscu* (2d Cir. 1964) 339 F.2d 823, 829, cert. den. 381 U.S. 915 [14 L.Ed.2d 435, 85 S.Ct. 1534].) Furthermore, in *Merry,* the federal claim in the prior action, although sufficient in a jurisdictional sense, was insubstantial on its face and was essentially a state law action for rescission of a contract in the guise of a federal civil rights suit. (*Merry* v. *Coast Community College Dist., supra,* 97 Cal.App.3d at p. 225.) This preponderance of state law issues would have been further grounds for dismissal of a pendent state claim in *Merry.* (*Mine Workers* v. *Gibbs, supra,* 383 U.S. at p. 726 [16 L.Ed.2d at p. 228]; *Kavit* v. *A. L. Stamm & Co.* (2d Cir. 1974) 491 F.2d 1176, 1179-1180.) As discussed above, *Boccardo I* presented a substantial federal claim under the Clayton Act; the case was not blanketed with state law issues. Thus, although it is possible that the federal court would have dismissed a Cartwright Act claim without prejudice to a later state action, we cannot say that it was clear that the court would have done so. On the contrary, given the identity of facts between appellants' state and federal claims, it is probable that the district court would have retained jurisdiction over the state claims in *Boccardo I* and disposed of them along with appellants' federal claims. For this reason, the dismissal of appellants' federal claims in *Boccardo I* precludes the further litigation of the same cause of action under a state law theory.

The judgments are affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 7, 1982. Bird, C. J., was of the opinion that the petition should be granted.