Filed 7/22/16  Kizor v. Blackwood Assocs. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAN KIZOR et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>BLACKWOOD ASSOCIATES, INC., et al.,<br><br>        Defendants and Respondents. | A144672<br><br>(Contra Costa County<br>Super. Ct. No. MSC09-01689) |

Plaintiffs Alan and Juanita Kizor appeal from a judgment entered in favor of defendants Blackwood Associates, Inc. (Blackwood), Alliance Roofing Company, Inc. (Alliance), and Robert Lis, individually and doing business as RJL Construction (RJL), following entry of an order sustaining without leave to amend the demurrer filed by these defendants. Plaintiffs also appeal from the judgment entered in favor of defendants DLE Manufacturers Representatives, Inc. (DLE) and Lance Wong following the grant of their motion for summary judgment. We find no error and shall affirm the judgments.

**Factual and Procedural History**

The facts in this dispute are by now very familiar to this court, which has previously decided appeals in this and in a related prior action. (*Kizor v. BRU Architects* (June 8, 2011, A125423) [nonpub. opn.] (*Kizor I*); *Kizor v. Redig* (Feb. 29, 2016, A143793) [nonpub. opn.] (*Kizor II*).)

Between 1998 and 2001, John and Miranda Redig had a home designed and constructed on their property in Orinda. The Redigs hired RJL as the general contractor

1

on the project. Blackwood, Alliance, Wong and DLE supplied roofing materials and/or participated in the installation of the roof.

After the Redigs moved into the home in late 2000, the home suffered from ongoing leaks and water damage. In March 2001 and then again in November 2001, John Redig wrote to Blackwood and RJL documenting the leaks. In December 2001, the Redigs executed an agreement with Lis to prepare the house for sale. The agreement specified that "All leaks to all building structures must be fixed. Further rains must verify that no leaks exist in any part of the structures, including outbuildings."

On August 1, 2002, the Kizors entered into a contract with the Redigs to purchase the Redigs' home for $2.775 million, contingent on inspections of the property. The Kizors withdrew their offer to purchase after an inspection raised several concerns relating to the roof. Shortly thereafter, Mr. Redig sent an email to Alan Kizor responding to the roofing inspector's concerns. Mr. Redig assured the Kizors that they "took no shortcuts" building their home and that the roof had received the "special attention" required. Mr. Kizor also received an email from Wong regarding the roofing materials used in the construction of the house. In his email, Wong explained the steps taken in the design and installation of the roof to "address . . . water penetration concerns" and "safeguard the roof against failure." He explained that the care taken resulted in a "structurally sound and fully functional roofing system" that "withstood the test of time." After receiving these emails, the Kizors had the roof inspected a second time. This time, the inspector reported that if the roof had been constructed and installed in the manner "the builder" and "the metal roof representative" had asserted, then the roof would have a reasonably long service life. Thereafter, in September 2002, the Kizors made a second offer to purchase the home for $2.675 million, which the Redigs accepted.

In spring 2005, the Kizors first noticed signs of water intrusion at a dining room window. When they obtained an estimate of the repair cost, the contractor informed them that the house might suffer from a systemic water intrusion problem. Between February and June 2006, the Kizors hired several water intrusion experts to perform destructive testing on their home. The testing confirmed the problem.

2

*Kizor I*

In August 2006, Mr. Kizor filed suit against, among others, Robert Lis, RJL, Blackwood and Alliance alleging, among other things, a cause of action for negligent construction of the house and a cause of action against Lis and RJL for concealment and failure to disclose to plaintiffs the problems with the roof. Summary judgment was entered in favor of defendants and the judgment was affirmed by this court.[1] (*Kizor I*, *supra*, A125423) [nonpub. opn.].) With respect to the negligence claims, we concluded that only the Redigs, as original owners of the home, were entitled to assert those claims, and that any related claim of the Kizors was against the Redigs. We explained, "Kizor's claims against the defendants are based on design and construction defects that caused significant apparent water intrusion while the former owners owned the house. Repairs were attempted through two consecutive rainy seasons with at best uncertain results, and the Redigs remained sufficiently concerned about leaks to require a release from any liability for future problems with the roof and stucco. In short, the undisputed evidence establishes that the Redigs were aware of the significant water intrusion problems during their ownership. Under [*Krusi v. S.J. Amoroso Construction Co., Inc.* (2000) 81 Cal.App.4th 995, 1005 (*Krusi*)], the cause of action against the various defendants for water intrusion damage due to design and construction defects thus vested in the Redigs during their ownership. '[T]he cause of action belongs to the owner who first discovered, or ought to have discovered, the property damage. It is only then that some entity capable of maintaining a legal claim will have suffered a compensable injury, e.g., the cost of repair and/or the loss in the property's value. . . .' " (*Kizor I*, *supra*, A125423) [nonpub. opn.].) We rejected Kizor's argument that "*Krusi* does not control because '[o]nce those repairs were performed and accepted by the Redigs, no cause of action remained to sue the contractors for the cost of repairing the leaks.' " (*Kizor I*, *supra*, A125423) [nonpub. opn.].) We explained, "At the core of this argument is the premise that the leaks that

---

[1] DLE was also named as a defendant in the breach of contract and fraud claims based on alleged misrepresentations in Wong's email but was dismissed without prejudice prior to entry of summary judgment.

occurred after Kizor bought the house were caused by defects that somehow differed from the defects that caused the leakage that the Redigs experienced and which, in his view, Lis repaired. The claim cannot be squared with Kizor's complaint, which explicitly describes a continuation of the exact same problems the Redigs experienced. It identifies both design and construction problems that cause rainwater to run down behind the stucco and penetrate the house, and alleges that the repair efforts were 'clearly done after the completion of the Residence, and did not address the root causes of the leaks and in fact [were] not the proper way to address those issues.' " (*Ibid.*) With respect to the fraud and deceit claims, we held that RJL adduced evidence that Lis had not made any actionable misrepresentations about the roof and plaintiffs failed to present any evidence to rebut that showing. (*Ibid.*) Finally, we found no error in the court's denial of Kizor's motion for leave to amend the complaint to add a cause of action for negligent repair based on the December 2001 repair contract and a cause of action for fraud against Blackwood based on the alleged misrepresentations in Wong's email. (*Ibid.*)

*Kizor II*

On June 11, 2009, the Kizors filed a complaint against Miranda Redig alleging causes of action for, among other things, breach of contract, failure to disclose, misrepresentation and fraud. In our prior opinion in this case, we affirmed a judgment in favor of Redig on the Kizors' fraud claims, entered after trial on the statute of limitations defense, but reversed the judgment as to the breach of contract claim that was based on sustaining a demurrer to that cause of action. (*Kizor II*, *supra*, A143793 [nonpub. opn.].) We explained that while substantial evidence supported the jury's finding that the Kizors were on notice by June 2006 of the Redigs' alleged failure to disclose the construction defects, there are allegations and evidence to support the contention that the Kizors were not on notice prior to June 2005. Accordingly, while plaintiffs' fraud causes of action are barred by the applicable three-year statute of limitations, trial is required to determine whether the breach of contract claim, subject to a four-year statute of limitation, is also barred. (*Ibid.*)

4

The *Kizor II* complaint also alleges causes of action against Robert Lis/RJL, Blackwood, Alliance, Lance Wong and DLE. Plaintiffs' claim for breach of the repair contract alleges that "In December 2001 the Redigs and RJL entered a new and separate contract whereby RJL was obligated to inspect the residence and repair all the leaks and other issues . . . including the repair of all known leaks and other construction issues." RJL "retained [Alliance, Blackwood, Wong and DLE] to assist" in performing the repair contract. "The majority of RJL's compensation under the repair contract was to be paid from the proceeds of the anticipated sale of the residence. RJL and [Alliance, Blackwood, Wong and DLE] also performed the repair contract as part of their warranty work and/or in part, to avoid potential liability for the damages from prior water intrusion." The complaint alleges that plaintiffs are intended third party beneficiaries of the repair contract and that they suffered damages as a result of defendants' "breach of their obligations to plaintiffs under the repair contract."

The complaint also alleges that RJL fraudulently concealed the defective nature of the roofing from plaintiffs by failing to disclose that "the work under the repair contract was intended to only temporarily resolve the leaks and repair the leak damages so that the residence could be quickly sold to a third party. RJL also failed to disclose that RJL stood to personally gain from the proceeds of the sale of the residence. . . . [¶] RJL also concealed and suppressed the true nature of water intrusion issues at the residence when Robert J. Lis met with plaintiffs' roof inspector and represented that the roof was sound and failed to disclose the true facts regarding the potential for water intrusion issues in the future." RJL and Alliance also performed work for plaintiffs after the purchase of the house and allegedly continued to conceal the defects from plaintiffs.

Finally, the complaint alleges a cause of action for intentional fraud and negligent misrepresentation against Wong, DLE and Blackwood. Plaintiffs allege that when Wong wrote the email to the Kizors reassuring them about the condition of the roof, he was acting in the course and scope of his employment by either DLE or Blackwood and that Wong knew that contrary to the statements in his email, the residence suffered from latent design and construction defects.

5

On January 20, 2012, the trial court sustained a demurrer filed by Blackwood and joined by Alliance and RJL on the ground that all of the claims against these defendants are barred by the doctrine of res judicata. The court rejected plaintiffs' argument that *Kizor II* involved a different "primary right" from the primary right at issue in the previous action. The court explained that the primary right in both actions is "the right to a property free from defects – or more specifically, a property free from damage (leaks and other related problems) resulting from unrectified construction defects." The trial court also rejected Kizors' argument that the *Kizor I* judgment was not "on the merits," the court reasoning that in the prior action the Kizors were afforded a full and fair opportunity to litigate all of their claims. Although the demurrer was sustained without leave to amend, judgment in favor of the demurring defendants was not entered until resolution of the claims against the remaining defendants.

On June 18, 2014, Wong and DLE moved for summary judgment. They argued that the entire action is barred by the applicable statute of limitations and alternatively, because they were in privity with Blackwood, the claims are also barred by res judicata. The court entered judgment in favor of Wong and DLE based on the res judicata ground and did not reach the statute of limitations argument.

The Kizors timely appealed from the judgments entered in favor of all defendants.

**Discussion**

1.      *Claims against Blackwood, Alliance and RJL*

Plaintiffs challenge the trial court's finding that their claims against these defendants are barred by res judicata. " ' "The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." ' [Citation.] '[R]es judicata benefits both the parties and the courts because it "seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration." ' " (*Villacres v. ABM*

6

*Industries Inc*. (2010) 189 Cal.App.4th 562, 575.) "Res judicata bars a cause of action that was or could have been litigated in a prior proceeding if '(1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding.' " (*Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp*. (2013) 214 Cal.App.4th 1520, 1527.)

Initially, plaintiffs contend the doctrine of res judicata is inapplicable because the decision in *Kizor I* did not result in a final judgment "on the merits." A " 'judgment is on the merits if it is based on the substantive law, and determines that the plaintiff has no cause of action . . . . The judgment is not on the merits if it is based merely on rules of procedure, and determines only that the plaintiff is not entitled to recover in the particular action.' " (*Boccardo v. Safeway Stores, Inc*. (1982) 134 Cal.App.3d 1037, 1042, citing 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 168, p. 3311; Rest. Judgments, § 49.) Plaintiffs argue that when a "case is dismissed for lack of standing, the merits of the plaintiff's claim or claims are never considered or decided by the court . . . [a]nd in the res judicata context, this means that a dismissal based on lack of standing is not 'on the merits.' " Plaintiffs cite numerous cases for the general proposition that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal" (*Warth v. Seldin* (1975) 422 U.S. 490, 520.) and that a litigant's "standing to sue is a threshold issue to be resolved before the matter can be reached on its merits" (*Hernandez v. Atlantic Finance Co*. (1980) 105 Cal.App.3d 65, 71).[2] The decision in *Kizor 1*, however, was not based on the conclusion that plaintiffs lacked standing in a procedural

---

[2] Plaintiffs citation to *Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1592, in which the court held that the termination of an underlying action for lack of standing did not constitute a favorable termination "on the merits" for malicious prosecution purposes, is not helpful because "[f]avorable terminations for purposes of malicious prosecution and for res judicata are different. '[A] favorable termination is necessary as a reflection of the malicious prosecution plaintiff's innocence in the prior proceeding. [Citation.] Res judicata and collateral estoppel on the other hand are not concerned with the actual merits of a prior adjudication but solely with the need for finality.' " (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1525.)

sense. Rather, the trial court made a substantive determination, which this court affirmed, that plaintiffs could not state a cause of action against these defendants based on the facts of the case. As explained above, because the Redigs were aware of the significant water intrusion problems during their ownership, this court held that under *Krusi, supra,* 81 Cal.App.4th at page 1005, the cause of action against the various defendants for water intrusion damage due to design and construction defects vested in the Redigs, not the Kizors.

*Boccardo v. Safeway Stores, Inc., supra,*134 Cal.App.3d 1037 is instructive. In *Boccardo*, the plaintiffs brought an action in federal court asserting claims for antitrust violations under the Clayton Act (15 U.S.C. § 15). The plaintiffs claimed the defendants engaged in an unlawful conspiracy to fix the price of meat. (*Boccardo*, p. 1040.) The federal court dismissed the action because the plaintiffs did not have direct dealings with the members of the price-fixing conspiracy as required by *Illinois Brick Co. v. Illinois* (1977) 431 U.S. 720. (*Boccardo*, p. 1042.) After the court dismissed the federal action, the plaintiffs filed an action in State court based upon the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.). (*Boccardo*, p. 1042.) The trial court dismissed the second lawsuit based on res judicata. (*Id.* at p. 1054.) On appeal, the plaintiffs argued the dismissal of the federal action was based on the procedural bar of standing and thus was not a final judgment on the merits. (*Ibid.*) In rejecting this claim, the *Boccardo* court pointed out, " 'the question of which persons have been injured by an illegal overcharge for purposes of § 4 [of the Clayton Act] is analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages under § 4.' " (*Boccardo*, pp. 1042-1043.) Because the federal court dismissed the case on the former ground, "the federal court based its dismissal not on lack of standing but on a substantive determination that appellants had no cause of action under section 4 of the Clayton Act. Thus the dismissal of [the federal action] was a judgment on the merits." (*Id*. at p. 1043.)

As in *Boccardo*, the court's ruling in *Kizor I* makes clear that the dismissal was not based on a procedural defect, but was substantive, based on the conclusion that as subsequent purchasers of the home plaintiffs could not state a cause of action against the

8

defendants for construction defects. The judgment in *Kizor I* is thus a decision on the merits.

Likewise, the court correctly determined that *Kizor II* involves the same cause of action as that adjudicated in *Kizor I*. "In California, a 'cause of action' is defined by the 'primary right' theory. 'The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.' " (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589-590.) "As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the legal theory on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the remedy sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682.)

In the trial court, plaintiffs argued that while *Kizor I* involved defendants' obligations regarding the original construction, *Kizor II* involves defendants' " 'obligation to competently investigate and repair the chronic leak problems suffered during the construction' " and, thus, *Kizor II* " 'involve[s] a primary right to be free from concealment and false representations regarding the fact that [defendants] inadequately investigated and repaired chronic leaks under the repair contract and conspired with the Redigs to fraudulently induce the Kizors into purchasing the residence by concealing and misrepresenting their knowledge.' " The trial court properly rejected this argument, explaining that the primary right at issue in both cases is plaintiffs' right to a home free from these construction defects. The same primary right is at issue whether the injury (a defective home) was caused by the builders' initial negligence, their negligent failure to repair, or their fraudulent concealment of their negligent construction or repair.

9

On appeal, plaintiffs do not appear to challenge the court's finding that the same primary right was at issue in both actions. Rather, they argue "Regardless of whether the elements of res judicata are satisfied here, it was error to sustain the demurrers . . . as to the breach of the repair contract, negligent repair, tort of another, and conspiracy claims (collectively, the 'negligent repair and conspiracy-based claims') because those claims were not discovered until long after the *Kizor I* complaint was filed, rendering res judicata inapplicable." Plaintiffs rely on *Allied Fire Prot. v. Diede Const., Inc.* (2005) 127 Cal.App.4th 150, 155 (*Allied Fire*), for the proposition that "a new or newly discovered claim can be brought in a second lawsuit regardless of whether that claim involves the same primary right as a claim that was litigated in the prior action, regardless of whether the same parties are involved in both suits, and regardless of whether the prior action resulted in a final judgment on the merits." (Italics omitted.)

*Allied Fire* is readily distinguishable. In that case, the court declined to apply res judicata because it found that in the exercise of reasonable diligence plaintiff would not have been aware of the facts underlying the new claim at the time of the first lawsuit. (*Allied Fire*, *supra*, 127 Cal.App.4th at pp. 156-158.) In contrast, the allegations in the *Kizor I* complaint make clear that while the actual repair contract may not have been disclosed until discovery commenced, plaintiffs were aware of the facts underlying the "negligent repair and conspiracy-based claims" when the first complaint was filed. The *Kizor I* complaint alleges that defendants breached their duty of care by negligently repairing the residence, by "failing to ensure that reported and known defects were repaired," by failing "to properly inspect and repair such defective conditions," and by performing "inspections and repairs using methods and material which were below the then-industry standard." The complaint also alleges that RJL knew the residence was not properly waterproofed and fraudulently concealed the defective nature of the work from plaintiffs and includes the same allegations made in the *Kizor II* complaint regarding the alleged misrepresentations in Wong's email. In the face of these allegations, we are not bound, as plaintiffs contend, to accept as true their conclusory allegation in *Kizor II* that

10

their claims based on the repair contract were not discovered until *after* the complaint in *Kizor I* was filed.

Accordingly, we find no error in the judgment entered in favor of defendants Blackwood, RJL and Alliance.

2. *Claims against Wong and DLE*

Plaintiffs contend that the court erred in granting summary judgment in favor of Wong and DLE. The complaint alleges causes of action against Wong and DLE for breach of the repair contract, negligent repair, fraud and deceit based on their failure to disclose the water intrusion problems and attempts to conceal the same, and fraud and negligent misrepresentation based on Wong's email to plaintiffs. Because we conclude that summary judgment was proper based on the statute of limitations defense, we need not consider whether Wong and DLE were also entitled to summary judgment based on res judicata.

Plaintiffs' claims are subject to, at most, a three-year statute of limitations. Code of Civil Procedure section 338, subdivision (d) requires a plaintiff to file an action for fraud within three years of the accrual of the claim. "The limitations period for a cause of action for ordinary negligence is two years." (*So v. Shin* (2013) 212 Cal.App.4th 652, 662, citing Code Civ. Proc., §§ 335, 335.1.) The statute of limitations for an action upon a contract, obligation or liability not founded upon an instrument of writing is two years.[3] (§ 339.) As discussed extensively in *Kizor I,* a plaintiff "discovers a cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) In other words, the limitations period begins once the plaintiff " ' "has notice or information or circumstances to put a reasonable person on inquiry." ' " (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896-897.)

---

[3] Although the repair contract is in writing, neither Wong nor DLE are parties to that contract. Any purported liability based on RJL's alleged "retention" of Wong and DLE "to assist . . . in performing the repair contract" for the benefit of plaintiffs is thus subject to a two-year limitations period.

11

According to plaintiffs, they were first informed of the systemic water intrusion problem in October 2005. Thereafter, destructive testing on their home confirmed the seriousness of the problem. In support of their motion for summary judgment, Wong and DLE submitted the declaration and deposition testimony of Don Horn, who conducted destructive testing on May 31, 2006, and June 5, 2006, and confirmed the source of the water penetration was the roof. Plaintiffs suggest that the fact that destructive testing was performed on June 5 did not establish that the Kizors must have known his conclusions on the same day. Horn's deposition testimony states, however, that Mr. Kizor was at the residence while the testing was conducted on May 31 and that "during the destructive testing [they] had conversations about what was going on." Horn had "numerous conversations" with Mr. Kizor and its "very likely" that Kizor was present on June 5 as well. According to Horn, he told Mr. Kizor "that the conditions we found would indicate that the entire roof has a systemic problem and needs to be replaced." This evidence undoubtedly placed plaintiffs on notice, as of June 5, 2006 at the latest, that Wong's statements may have been fraudulent. Accordingly, the statute of limitations bars all of plaintiffs' claims in the complaint filed on June 11, 2009.[4]

## Disposition

The judgment is affirmed. Defendants shall recover their costs on appeal.

---

[4] Plaintiffs argue, for the first time in their reply brief, that this court should "reinstate the aiding and abetting claims" against defendants so as to prevent defendants from escaping their exposure as coconspirators to Miranda Redig's alleged breach of the real estate purchase contract based on her failure to make all required disclosures. Aside from the untimeliness of this contention, it also lacks merit. Aiding and abetting and conspiracy are concepts that apply to the commission of a tort and not to the breach of a contract. (Rest.2d Torts (1979) § 876.) While a party may incur liability for inducing another's breach of contract, such conduct is itself a tort, subject to the three-year statute of limitations. To the extent that one assists in the commission of a tort, such as fraud, the three-year statute also applies.

_____
Pollak, J.

We concur:

_____
McGuiness, P.J.

_____
Jenkins, J.