ADOLPH COORS COMPANY; T.F. Louderback, Inc., d/b/a Coors Distributing of Oakland; Concord Beverage, Inc., d/b/a Coors of Contra Costa; Coors Distributing Company of San Jose, d/b/a California Beverage Company, Lloyd B. Henry, Inc.; Coors Distributing Company of San Jose; Regal Beverages, Inc., d/b/a Coors West; Coors Distributing Company of Hayward, Inc.; House of Daniels, Inc. d/b/a Golden Gate Distributing Co.; Corda Distributing Company; Clark Miller Distributing Inc., Plaintiffs,

v.

A. David SICKLER, Individually and as Coordinator of the Northern California Chapter of AFL–CIO Coors Boycott Committee and AFL–CIO Coors Boycott Committee doing business as Northern California Chapter of AFL–CIO Coors Boycott Committee; Howard Wallace, Individually and as Coordinator of the Northern California Chapter of AFL–CIO Coors Boycott Committee; AFL–CIO Coors Boycott Committee doing business as Northern California Chapter of AFL–CIO Coors Boycott Committee; Northern California Chapter of AFL–CIO Coors Boycott Committee; and Does I–L, inclusive, Defendants.

No. CV 84–2346 MRP.

United States District Court, C.D. California. March 1, 1985. On Modification of Opinion May 8, 1985.

Robert K. Carrol, Robert L. Zaletel, Littler, Mendelson, Fastiff & Tichy, A Professional Corp., San Francisco, Cal., Earl K. Madsen, Bradley, Campbell & Carney, A Professional Corp., Golden, Colo., for plaintiffs Adolph Coors Co., et al.

Fred H. Altshuler, Marsha S. Berzon, Michael Rubin, Altshuler & Berzon, San Francisco, Cal., for defendants.

## OPINION

PFAELZER, District Judge.

Plaintiffs' motion to remand and defendants' motion to dismiss, or in the alternative for summary judgment, came on for hearing on July 2, 1984. The Court, having considered the papers filed and oral arguments made, now files this Opinion.

## I. BACKGROUND

In the spring of 1981, plaintiffs[1] ("Coors") and KQED, Inc. ("KQED"), a public television station located in San Francisco, agreed that, in exchange for financial support and manpower, Saturday, May 30, 1981 was to be "Coors Day" at the annual KQED auction. After some ad-

---

1. Adolph Coors Co. and its San Francisco Bay Area distributors.

verse publicity in the local press regarding Coors and its sponsorship of the KQED auction, Howard Wallace ("Wallace") and A. David Sickler ("Sickler"), coordinators of the Northern California Chapter of the AFL–CIO Coors Boycott Committee ("the Northern California Committee"), began organizing a protest against "Coors Day". On May 26, 1981, Wallace, as agent for the Northern California Committee, met with KQED president Anthony Tiano and other KQED personnel. At this meeting, Wallace allegedly

> threatened Mr. Tiano and other KQED personnel that KQED had stumbled into a 'shooting war' between Defendants and the Adolph Coors Company and that KQED and its volunteers would be in the 'cross-fire' of that war.... Defendant Wallace further threatened Mr. Tiano and other KQED personnel at this May 26, 1981 meeting that he could not guarantee the safety of the KQED auction volunteers from acts and conduct of the Defendants....[2]

It is further alleged that Wallace threatened that if Coors underwrote the KQED auction, the auction would be subject to mass picketing and that the Northern California Committee would jam the station's phone lines with calls[3]. Plaintiffs claim that, as a consequence of these threats, KQED was induced to breach its contract with them.

In February 1982, plaintiffs brought suit[4] ("*Coors v. Wallace*") in the District Court for the Northern District of California alleging that Wallace, individually and as President of the Northern California Committee, and Sickler, individually and as Coordinator of the Northern California Committee, had violated Section 1 of the Sherman Act and had committed several state law torts. In the summer of 1982, defendants brought a motion for summary judgment. After this motion had been submitted, plaintiffs filed a motion for leave to file an amended complaint adding a second-

ary boycott claim under Section 303 of the National Labor Relations Act ("N.L.R.A.") as amended, 29 U.S.C. § 187. On February 17, 1984, the Honorable Spencer Williams granted defendants' motion for summary judgment with respect to the federal antitrust claim. Finding that plaintiffs had unduly delayed in filing their secondary boycott claim and that amendment of the complaint would be prejudicial to the defendants, Judge Williams denied plaintiffs' motion for leave to amend their complaint. Finally, Judge Williams dismissed the remaining state law tort claims, without prejudice, "to permit the plaintiffs to refile them in the state court, if they so choose."

On March 9, 1984, plaintiffs filed this action in the Superior Court of the State of California for the County of Los Angeles naming as defendants Wallace and Sickler, individually and as coordinators of the Northern California Committee, the Northern California Committee itself, and the AFL–CIO Coors Boycott Committee doing business as the Northern California Chapter of AFL–CIO Coors Boycott Committee ("the AFL–CIO Committee"). The complaint contains five claims. In the first four, plaintiffs reallege the state law tort claims that were dismissed without prejudice in *Coors v. Wallace* (e.g., intentional interference with contractual relations). The fifth claim unlike the first four which are directed against all defendants, is directed only against the defendant Northern California Committee and the defendant AFL–CIO Committee (the "organization defendants"). This claim alleges that, by their conduct, the organization defendants violated the secondary boycott prohibitions contained in Section 8(b) of the N.L.R.A., 29 U.S.C. § 158(b). Federal and state courts have concurrent jurisdiction over this claim pursuant to Section 303 of the N.L.R.A., 29 U.S.C. § 187.

## II. DISCUSSION

Defendants have moved to dismiss the action in its entirety. They contend that

---

**2.** *Complaint,* ¶¶ 26–27.

**3.** *See Complaint,* ¶ 29.

**4.** *Adolph Coors v. Wallace,* 570 F.Supp. 202, *appeal docketed,* No. 84–1725 (9th Cir. March 14, 1984).

since Coors could have litigated the secondary boycott claim in its prior suit, it is barred by the doctrine of *res judicata* from bringing that claim in this action. With respect to the plaintiffs' state law tort claims, defendants argue that these claims are preempted by the federal labor laws.

As a threshold matter, in order for this Court to entertain these motions, there must be a determination that removal was proper. If it was not, the Court must remand the case to the state court for resolution of the motions. *See Chism v. National Heritage Life Insurance Co.*, 637 F.2d 1328, 1330 n. 3 (9th Cir.1981); 14A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3739 at 757–58 (1976).

## III. REMOVAL

Possible bases for removal are to be found in 28 U.S.C. §§ 1441(b) and 1441(c).

### A. *28 U.S.C. § 1441(b)*

28 U.S.C. § 1441(b) provides, in relevant part, that

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

### 1. *"Artful Pleading"*

Plaintiffs' fifth claim expressly invokes federal law. However, as noted above, this claim is directed against the organization defendants only. Although the remaining claims ostensibly are predicated on state law, defendants assert that federal law preempts these claims and provides an exclusive federal remedy for the wrongs alleged by plaintiffs. Therefore, defendants argue, plaintiffs' action is based in its entirety on federal law and, as a consequence, removal is warranted pursuant to § 1441(b) irrespective of the manner in which Coors has alleged its first four claims. Although the question is a close one, the Court has concluded that plaintiffs' state law tort claims are not wholly preempted. There-

fore, removal on the ground that this action is based solely on federal law is not warranted.

■ A case "arises under" federal law if "a right or immunity created by the Constitution or laws of the United States [constitutes] an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Accordingly, a defendant "may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983). Thus, where preemption is asserted by way of defense, it cannot serve as a basis for removal. *See, e.g., Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 192 (9th Cir.1983).

■ The plaintiff is the master of his complaint, and is free to disregard a federal claim and rely instead on a state claim. *See, e.g., Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984). However, if the true basis of the plaintiff's complaint is federal law, the Court will look beyond the plaintiff's "artful pleading" and find removal proper. *See Schroeder*, 702 F.2d at 191.

■ In *Garibaldi*, 726 F.2d at 1370 n. 5, the Ninth Circuit articulated the distinction between an "artfully pled complaint and one that is preempted, but not removable". When "federal law not only displaces state law but also confers a federal remedy on the plaintiffs", removal is proper because the plaintiff's claim "states on its face" an action arising under federal law. *Id.* In contrast, if the preemption argument "focuse[s] on the proposition that the state could not regulate the field [rather than] that the complaint state[s] a federal cause of action", then removal is defensive and not a proper ground for removal. *Id.* Therefore, the court stated, in a case involving labor law, rather than dismissing a case initially under the proposition that preemption cannot constitute a basis for re-

moval, a court must "look to the substance of [the plaintiff's] claim to see if it states on its face a federal cause of action, i.e., if federal law requires [the plaintiff] to rely on a federal remedy in [the] case". *Id.*

Federal law does provide plaintiffs with a remedy in this case against every defendant. Even though the federal labor laws immunize individuals from § 303 liability, *see Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 8 (1st Cir. 1983), *cert. denied,* ── U.S. ──, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983), plaintiffs could have pursued an unfair labor practice charge against the individual defendants. *See* 29 U.S.C. §§ 158(b)(4)(i) and (ii). Federal law having furnished a remedy for the plaintiffs, under *Garibaldi,* this Court must examine the plaintiff's state law tort claims to determine whether federal law has preempted them in their entirety.[5] If it has not, then, since plaintiffs are the masters of their complaint, they may ignore the available federal remedy and pursue their state law claims.

### 2. *Preemption*

■ Generally, when the conduct at issue is arguably prohibited or protected by the N.L.R.A., otherwise applicable state law and procedures are preempted. *See Farmer v. United Brotherhood of Carpenters & Joiners,* 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977). The Supreme Court, however, has often found exceptions to this rule. In *Farmer,* 430 U.S. at 298, 97 S.Ct. at 1062, the Court set forth three factors to guide courts in

making preemption determinations: (1) whether the underlying conduct is protected under the federal labor laws—if it is not, there is "no risk that permitting the state cause of action to proceed would result in state regulation of conduct that Congress intended to protect"; (2) whether there is an "overriding state interest" in protecting state residents from the conduct at issue and whether this state interest "was deeply rooted in local feeling and responsibility"; and (3) whether there is "little risk" that the state action would interfere with the effective administration of national labor policy. In *Farmer,* the Court applied these factors to a state action for intentional infliction of emotional distress arising out of discriminatory hiring hall practices. The Court found that the action was not preempted, but emphasized that "something more" than discrimination was required: "it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." *Id.* at 305, 97 S.Ct. at 1066.

The Supreme Court has long recognized an exception to the preemption rule in cases involving violence and the threat of violence. *See, e.g., United Automobile Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). In *Laburnum,* the

---

5. Some district courts have taken a different approach to the artful pleading doctrine in the labor law context. These courts have required the federal remedy that displaces state law to be one over which the court itself has jurisdiction. Therefore, these courts have refused to recharacterize a complaint and have remanded the action when the plaintiff's only possible federal remedy was before the National Labor Relations Board. *See, e.g., Drivers, Chauffeurs & Helpers v. Seagram Sales Corporation,* 531 F.Supp. 364, 367 n. 4 (D.D.C.1981); *Coulston v. International Brotherhood of Teamsters,* 423 F.Supp. 882, 884 (E.D.Pa.1976). This approach is supported neither by the rule articulated in *Garibaldi* nor by the most closely analogous

case law in this circuit, *see Schroeder,* 702 F.2d at 189 (removal proper because of existence of federal remedy even though district court lacked subject matter jurisdiction). Nor has it been followed by the one circuit court that has considered the question. *See Universal Communications Corp. v. Burns,* 449 F.2d 691 (5th Cir. 1971) (factually similar to the instant case except the union official's conduct was nonviolent. Court of Appeals for the Fifth Circuit affirmed district court's denial of motion to remand on the ground that federal law preempted state law, even though plaintiff had no damage remedy under § 303 against the defendant union official).

Court expressly limited its grant of certiorari to the question of the State's jurisdiction "in a common-law tort action ..." to award damages "[i]n view of the type of conduct found by the Supreme Court of Appeals of Virginia to have been carried out by Petitioners...." *Id.* at 658–59, 74 S.Ct. at 834. The Court repeatedly emphasized that its decision was limited to a situation involving violence and threats of violence. *See id.* at 660–62, n. 4, 668, 74 S.Ct. at 835–36 n. 4, 840. The Court concluded that it would be inconsistent with the provisions of the N.L.R.A. which allow recovery for damages caused by secondary boycotts not to allow an injured party "to recover damages caused more directly and flagrantly through such conduct as is before us." *Id.* at 666, 74 S.Ct. at 839. Therefore, it held that the state common law action was not preempted and affirmed the award of the plaintiff's loss of profits caused by the disruption of plaintiff's business resulting from the violence. Similarly, in *Russell,* the Supreme Court held that the state tort of wrongful interference with a lawful business relationship was not preempted where the picketing involved physical obstruction of a plant entrance and threats of violence.

In *Farmer,* the Supreme Court explained that the violence exception fits neatly into its three-factor preemption analysis:

> Nothing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute, [citations omitted] and thus there is no risk that state damages actions will fetter the exercise of rights protected by the NLRA. On the other hand, our cases consistently have recognized the historic state interest in "such traditionally local matters as public safety and order and the use of streets and highways." [Citations omitted.] And ... state-court actions to redress injuries caused by violence or threats of violence are consistent with effective administration of the federal scheme: Such actions can be adjudicated without regard to the merits of the underlying labor controversy.

*Farmer,* 430 U.S. at 299–300, 97 S.Ct. at 1063. Plaintiffs' complaint, as discussed above, alleges that defendants' tortious acts consisted in part of threats of violence. Therefore, under the case law cited, the complaint appears to state an exception to preemption. *See Rainbow Tours, Inc. v. Hawaii Joint Council of Teamsters,* 704 F.2d 1443, 1447 (9th Cir.1983) (state tort action for interference with contractual relations based on unlawful mass picketing not preempted by § 303).

Defendants attempt to escape the violence exception to preemption in several ways. First, they argue that the facts are not sufficiently egregious to satisfy the violence exception. They contend that it is unclear whether the alleged conduct constitutes a threat of imminent physical violence or instead constitutes the type of robust language and clash of strong personalities that is free from state regulation. The flaw in this argument is that a liberal reading of the complaint, which the Court is required to provide, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), suggests that the former type of behavior is at the heart of plaintiffs' claims. While, after a review of the evidence, the Court might find that defendants' statements were merely "the type of robust language and clash of strong personalities that may be commonplace in various labor contexts", *Farmer,* 430 U.S. at 306, 97 S.Ct. at 1066, such a finding is premature at this stage of the case.

In a second argument against the application of the violence exception, defendants contend that *Farmer's* third factor—interference with the federal scheme of regulation—mandates the preemption of plaintiffs' action. In making this argument, defendants rely on *Local 926, International Union of Operating Engineers v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 1462, 75 L.Ed.2d 368 (1983), in which the Supreme Court stated that the standard for preemption analysis is whether the plaintiff's state and federal claims are "the same in a fundamental respect." Al-

though plaintiffs' state law claims and the federal unfair labor practice charge that they could have presented to the National Labor Relations Board overlap in several respects, the Court is not persuaded by defendants' arguments. As the Supreme Court stated in *Farmer*, a state law tort claim is not preempted if it is *either* unrelated to the federal claim *or* a function of the particularly abusive manner in which the federally prohibited conduct is accomplished. Since the Supreme Court phrased its rule governing exceptions to preemption in the disjunctive, it should be sufficient, in order to avoid preemption, to satisfy either leg of the exception test.[6] In this case, according to the complaint's allegations, the first two *Farmer* factors are satisfied *because* of the manner in which the tort was perpetrated (i.e., through threats of violence). The Court is of the view that this is enough to escape preemption. Moreover, even if *Farmer* is read as requiring that in each case, all three *Farmer* factors are to be balanced against one another, the Court's conclusion would remain the same. Viewing the preemption doctrine in this manner, the decisions in *Russell* and *Laburnum* indicate that, in cases involving violence or the threat of violence, the first two *Farmer* factors outweigh the third. The Court believes that the resolution of the "sensitive balancing", *Jones*, 103 S.Ct. at 1459, in these cases is controlling here. Consequently, however the *Farmer*'s test of preemption is analyzed, the Court concludes that the state law claims have not been displaced by the federal labor laws.

### 3. Pendent Party Jurisdiction

■ Under the theory of "pendent jurisdiction," a federal court has the Constitutional "power to hear ... non-federal claims along with ... federal ones" as long as the claims "arise from a 'common nucle-

us of operative fact' ". *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Plaintiffs' state law tort claims and their secondary boycott claim are indisputably connected and intertwined. *See Bonanno Linen Service*, 708 F.2d at 10. As a consequence, if plaintiffs had brought the action solely against the organization defendants or, alternatively had been able to plead a federal claim against the individual defendants, the exercise of federal court jurisdiction over the entire suit would be proper under the theory of *"pendent claim"* jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, as discussed above, plaintiffs assert no federal claim against the individual defendants. Therefore, only the theory of *"pendent party"* jurisdiction would give the Court original jurisdiction over plaintiffs' entire action.

In *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), the Supreme Court dealt with the question of whether Congress, in a jurisdictional statute, intended to open the federal courts to particular state law claims against pendent parties. Although in *Aldinger*, the Supreme Court did not evidence an intention to foreclose pendent party jurisdiction in all contexts, the Ninth Circuit "historically has been hostile to the concept of pendent party jurisdiction." *Safeco Insurance Co. of America v. Guyton*, 692 F.2d 551, 555 (9th Cir.1982). The Ninth Circuit has refused to invoke the doctrine in contexts in which the case for its adoption was stronger than it is in this action, *see, e.g., Ayala v. United States*, 550 F.2d 1196 (9th Cir.1977) (Ninth Circuit rejected doctrine even though the federal court had exclusive jurisdiction over the plaintiff's federal claim), and has repeatedly held "that pen-

---

6. *Cf. Carter v. Sheet Metal Workers' International Association*, 724 F.2d 1472, 1477 (11th Cir. 1984) ("The federal preemption doctrine provides that a disputant in a labor union controversy cannot file an action in a state court based upon a common law or statutory ground if the facts essential to the state court cause of action are the same as those essential to an unfair labor practice complaint. The exception, of course, is where (1) the conduct is so deeply rooted in local law that the state's interest in regulating is compelling, or (2) the matter is of only peripheral concern to the federal labor policy").

dent party jurisdiction will not substitute for complete diversity or a federal question," *Safeco*, 692 F.2d at 555. Therefore, since this Court lacks an independent jurisdictional base for the claims asserted against the individual defendants, it may not exercise jurisdiction over the claims against them.

### 4. *Partial or Total Remand*

 The foregoing discussion demonstrates that plaintiffs' claims against the individual defendants do not raise a federal question and that this Court may not, pursuant to § 1441(b), exercise jurisdiction over these defendants under the doctrine of pendent jurisdiction. Having reached this result, the Court must decide the difficult question of whether to remand the entire action or to retain jurisdiction over the claim against the organization defendants, remanding only those against the individual defendants.

In *Bonanno Linen Service*, 708 F.2d at 1, the First Circuit was presented with facts substantially identical to those which exist in the instant case. The Court discussed two factors counseling in favor of retaining the "arising under" claim. First, remand of the whole state proceeding "is inconsistent with the well-established rule that the removal statute embraces the same 'class of cases' as does the original jurisdiction statute." *Id.* at 11. Second, the Court stated,

> before 1948, the 'arising under' defendant was allowed to remove his 'suit', leaving other defendants behind, if nec-

essary [citations omitted]. The Reviser nowhere suggested an intent to change this result. Rather, the Reviser's Note indicates that the change in terminology was meant to be cosmetic; Moore concludes that no change in substance was intended.

*Id.* Based upon these considerations, the Court "conclude[d] that it is proper here for the Local to remove [plaintiff's] 'arising under' and pendent claims against it to federal court, even if the other state claim defendants must be left behind." *Id.*

The First Circuit, however, did not discuss the arguments counseling for remand of the entire suit and there are many. First, the express language of § 1441(b) states that removal is proper only if the district court has original jurisdiction over the "civil action." In construing other sections of the removal statutes, courts have interpreted the phrase "civil action" to mean the entire action. *See, e.g., Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376–77 (5th Cir.1980) (under § 1441(d) foreign state may remove entire civil action, not simply claims involving the foreign state); *Murphy v. Kodz*, 351 F.2d 163, 165–67 (9th Cir.1965) (under § 1442(a)(1), federal officer may remove entire case against all defendants, federal and non-federal)[7]; *Mori v. Port Authority of New York and New Jersey*, 100 F.R.D. 810, 812 (S.D.N.Y.1984) (same); *Alifieris v. American Airlines, Inc.*, 523 F.Supp. 1189, 1192–93 (E.D.N.Y.1981) (same); *Bottos v. Avakian*, 477 F.Supp. 610, 611 n. 3 (N.D. Ind.1979) (same).[8,9]

---

**7.** In light of the Ninth Circuit's restrictive approach to the doctrine of pendent party jurisdiction, the continued vitality of *Murphy* has been placed in doubt.

**8.** The effect of construing civil action as signifying entire action in these cases was to locate the entire litigation within a federal forum. In the instant case, in contrast, this construction of the words civil action would place the entire action in a state forum. As discussed below, *see* p. 1426, *infra*, because, in the instant case, joining the party against whom the non-federal claim is asserted as an additional defendant would affect the forum in which the action is heard, the

distinction between the cases cited and this case is significant.

**9.** In removing the entire action in these cases, the federal courts were exercising pendent party jurisdiction. *See Arango*, 621 F.2d at 1377 n. 7. Had the identical cases been filed in federal court in the first instance, however, it is evident that the court would have dismissed the action to the extent that it was not brought against the foreign state or federal officer. These cases therefore demonstrate, at least outside the Ninth Circuit, that removal jurisdiction is not coextensive with original federal jurisdiction. Thus, it is not clear how "well-established" the "rule" upon which the First Circuit relied in *Bonanno*

Second, although the First Circuit in *Bonanno Linen Service* cited a portion of the Reviser's Note in support of the finding that "civil action" is synonymous with "suit", it ignored another portion of the Reviser's Note lending support to the contrary conclusion. The Note states that the words "civil action" are to be viewed "in harmony" with Rule 2 of the Federal Rules of Civil Procedure which provides that "there shall be one form of action." This statement has led one commentator to conclude that " 'civil action' should not be interpreted as 'suit' since the Reviser's Note indicates that the term was to have the same meaning that it does in the Federal Rules of Civil Procedure." Lewin, *The Federal Courts' Hospitable Back Door*, 66 Harv.L.Rev. 423, 426 (1953).

Third, it could be argued that if Congress had intended to authorize partial removal in a pendent party case such as this, it could easily have done so. In jurisdictional provisions enacted since 1948, Congress has demonstrated the ease with which it could achieve such a result. For example, 28 U.S.C. § 1478(a), which governs removal to the bankruptcy courts, provides that "[*a*] *party may remove any claim or cause of action in a civil action* . . . to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action." (Emphasis added.)

Finally, interpreting the words "civil action" to mean the entire case would promote judicial efficiency and economy. Under the First Circuit's approach, a plaintiff in a pendent party situation (in which the claims against some but not all of the parties arise under federal law) is incapable of litigating his claims in a single forum if the defendants desire to sever the action. Restrictive pendent party rules will preclude him from bringing his entire action in a federal forum. Alternatively, if the plaintiff attempts to pursue his litigation in a state forum, the "arising under" defendant

can thwart the plaintiff's desire by removing those claims asserted against it. In *Aldinger*, 427 U.S. at 1, 96 S.Ct. at 2413, the Supreme Court recognized the importance of judicial economy. It stated that when the grant of jurisdiction to a federal court is exclusive, "the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together." *Id.* at 18, 96 S.Ct. at 2422. This argument, stated the Court, "might call for a different result." *Id.*

While the arguments that can be marshalled in support of remanding the entire action are strong, other arguments in addition to those invoked in *Bonanno Linen Service*, weigh in favor of adoption of the First Circuit's approach. In *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 246, 90 S.Ct. 1583, 1590, 26 L.Ed.2d 199 (1970), Justice Brennan observed that "the underlying purposes of Congress in providing for federal question removal jurisdiction remain somewhat obscure." He added that while the legislative history of the federal question removal provision was not illuminating, "it has been suggested that its purpose was the same as original federal question jurisdiction, . . . namely, to protect federal rights, [citation omitted] and to provide a forum that could more accurately interpret federal law." *Id.* at 246 n. 13, 90 S.Ct. at 1590 n. 13. Without debating the merit of this argument, however, there is a still more compelling consideration which provides support for the First Circuit's approach. If the position advocated by plaintiffs were accepted, a plaintiff wishing to prevent removal of his case could do so by the simple device of joining with his federal claim a related state claim against another defendant. *Cf. Thomas v. Shelton*, 740 F.2d 478 (7th Cir.1984). Whatever its disadvantages, at least the First Circuit's approach prevents a plaintiff asserting a fed-

Linen Service, really is; moreover, even if such a rule does exist, it does not appear to merit

much consideration in the jurisdictional analysis.

eral claim from taking this unfair advantage.[10]

It is obvious that partial remand will achieve an unsatisfactory result in this matter, but so will total remand. In this type of case, there is a strong argument that adoption of the doctrine of pendent party jurisdiction would remain faithful to the language of § 1441(b) and would serve the interests of economy and efficiency.[11] Unfortunately, in the Ninth Circuit, that avenue is totally foreclosed and the Court must choose the lesser of two evils. On balance, therefore, the Court has concluded that the approach adopted in *Bonanno Linen Service* is the preferable one. *But see Superior Fish Co., Inc. v. Royal Globe Insurance Co.*, 521 F.Supp. 437, 439–444 (E.D.Pa.1981) (remanding entire action). In reaching this result, the Court is primarily influenced by the fact that a contrary decision, as discussed above, would confer upon a plaintiff possessing a federal question claim the power to select a forum to suit his tactical objectives. The Court fears that that power would be too likely to be abused.[12]

**B. *28 U.S.C. § 1441(c)***

■ Section 1441(c) authorizes removal of an entire case when "a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, ...." In *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 12, 71 S.Ct. 534, 539, 95 L.Ed. 702 (1951), a resident of Texas sued two foreign insurance companies and a resident agent of the companies to recover for a fire loss. The case was removed in its entirety from the state court to the District Court and judgment entered against one of the foreign insurance companies. The Court of Appeals affirmed, concluding, with respect to the issue of removal, that the causes of action against the foreign insurance companies were "separate and independent" from those against the resident agent and, therefore, the action was properly removable under 28 U.S.C. § 1441(c).

The Supreme Court reversed the judgment of the Court of Appeals, holding that the removal was improper because the claims against the foreign insurance com-

---

**10.** The court recognizes that *Bonanno Linen Service,* may also produce undesirable results. Under the First Circuit's approach, the defendant against whom the federal claim was asserted, by exercising his right to remove the action insofar as it is asserted against him, can force the plaintiff into two forums, thereby increasing the plaintiff's cost of litigating the action.

**11.** Moreover, invoking pendent party jurisdiction in the context of this action would not serve to open the floodgate to utilization of that doctrine. It certainly would provide no support to a plaintiff intent on filing his entire pendent party action in federal court in the first instance. As the Supreme Court stated in *Owen Equipment,* 437 U.S. at 376, 98 S.Ct. at 2403, "[a] plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations. '[T]he efficiency plaintiff seeks so avidly is available without question in the state courts.' [citations omitted]." In contrast, a defendant who removes an entire action more closely fits the typical pattern of ancillary jurisdiction, in that it would be invoked by "a defending party haled into court against his will...." *Id.* at 376, 98 S.Ct. at 2404. In rejecting pendent party juris-

diction in *Bonanno Linen Service,* the First Circuit relied heavily on *Aldinger,* 427 U.S. at 1, 96 S.Ct. at 2413. In doing so, however, the First Circuit failed to distinguish the two cases on the ground that in the case before it, in contrast to *Aldinger,* the party seeking to invoke pendent party jurisdiction had been haled into court as a defendant.

It is noteworthy that in the context of pendent party federal question removal jurisdiction, a plaintiff who files an action in state court is often motivated by a desire to pursue his action efficiently while a defendant who removes the action will often be influenced by a desire to secure a federal forum for the federal question claim. Only through the doctrine of pendent party removal jurisdiction is it possible to satisfy the interests of both litigants.

**12.** Defendants argue that removal is also appropriate under 28 U.S.C. § 1331. They base this contention on the thesis that federal law has preempted plaintiffs' action in its entirety and displaced it with a federal remedy. This argument is identical to that discussed above. It fails because plaintiffs' state tort law claims are not preempted in their entirety, and plaintiffs, as masters of their complaint, may elect to forego federal remedies when these remedies do not wholly supersede state law.

panies were not "separate and independent" from those against the resident agent. In reaching this result, the Court stated that,

> [W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

*Finn,* 341 U.S. at 14, 71 S.Ct. at 540. Here, since the state law tort claims against the individual defendants are, as they were in *Bonanno Linen Service,* 708 F.2d at 10, "connected and intertwined" with the federal claim against the organization defendants, removal under § 1441(c) is not permissible.

This case is, of course, not a diversity case and therefore arguably not controlled by the decision in *American Fire & Casualty v. Finn.* Nevertheless, the Court agrees with the First Circuit that to interpret the words "separate and independent" differently in an "arising under" case would be unwise on a number of grounds. One highly significant reason is that the predecessor to § 1441(c) applied only to diversity jurisdiction and since Congress did not appear to have federal question jurisdiction in mind when it revised § 1441(c), *see* Cohen, *Problems in the Removal of a "Separate and Independent Claim or Cause of Action",* 46 Minn.L. Rev. 1, 31–32 (1961), construing the section to *expand* a defendant's right to remove in "arising under" cases would seem to contravene the intent of Congress. More importantly, however, it appears that the application of § 1441(c) to federal question cases is of doubtful constitutionality. In *Owen Equipment,* 437 U.S. at 373, 98 S.Ct. at 2402, the Supreme Court stated that a finding that federal and nonfederal claims arise from a "common nucleus of operative fact" is the "constitutional minimum" for the exercise of jurisdiction by a federal court over a non-federal claim. Since "separate and independent" claims are fairly clearly claims which do not arise from a "common nucleus of operative facts", *see* 1A *Moore's Federal Practice* ¶ 163 [4.–5] at

338–39 (1983), federal courts would appear to lack the constitutional power to hear the non-federal claim. *See* Lewin, *supra,* at 423; *cf. Thomas,* 740 F.2d at 478 (stating that construing § 1441(c) to authorize removal of a non-federal claim unrelated to a federal question claim "would raise constitutional questions"). *But see* 1A *Moore's Federal Practice,* ¶ 163[3] at 315–22 (1983); *cf. People v. Sanitary District of Hammond,* 498 F.Supp. 166, 168 (N.D.Ill.1980) (asserting, without discussing the constitutional question, that § 1441(c) applies to federal question jurisdiction cases).

Accordingly,

IT IS ORDERED that:

1. Plaintiffs' motion to remand is granted insofar as it relates to defendants Sickler and Wallace and denied insofar as it relates to the organization defendants, and

2. Organization defendants' motion to dismiss, or in the alternative, for summary judgment on the grounds of *res judicata* and federal labor law preemption are denied.

## ON MODIFICATION OF OPINION

### INTRODUCTION

On March 4, 1985, this Court entered an Opinion which granted plaintiffs' motion to remand insofar as it related to the claims alleged against defendants A. David Sickler and Howard Wallace, and denied defendants' motion to dismiss or in the alternative, for summary judgment on the grounds of res judicata and federal labor law preemption. Defendants moved for reconsideration of the Court's ruling on res judicata or alternatively for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Oral argument on the motion was heard on April 8, 1985. After careful consideration of the papers filed and oral arguments made, the Court grants defendants' motion for reconsideration and modifies its earlier ruling. The Court finds that plaintiffs' claim against the AFL–CIO Coors Boycott Committee, d/b/a Northern California Chapter of the AFL–CIO Coors

Boycott Committee, and the Northern California Chapter of AFL–CIO Boycott Committee ("organizational defendants"), under Section 303 of the National Labor Relations Act ("N.L.R.A."), 29 U.S.C. § 187, is barred by the doctrine of res judicata because it could have been raised in *Adolf Coors Co. v. Wallace*, 115 L.R.R.M. 3100 (Feb. 17, 1984) (N.D.Cal.) (*"Coors I "*).

BACKGROUND

In February 1982, plaintiffs ("Coors") brought suit in the Northern District of California against Howard Wallace ("Wallace"), A. David Sickler ("Sickler"), Solidarity, and the Northern California Chapter of AFL–CIO Coors Boycott Committee ("Northern California Chapter") alleging that the defendants had violated Section 1 of the Sherman Act, and had committed several state law torts. In the summer of 1983, defendants brought a motion for summary judgment. After the motion had been submitted, Coors filed a motion for leave to file an amended complaint adding a secondary boycott claim under the N.L.R.A., 29 U.S.C. § 187. On February 17, 1984, the Honorable Spencer Williams granted defendants' motion for summary judgment with respect to the federal antitrust claim. Finding that Coors had unduly delayed in filing their secondary boycott claim and that amendment of the complaint would be prejudicial to the defendants, Judge Williams denied Coors' motion for leave to amend their complaint. Finally, Judge Williams dismissed the remaining state law tort claims, without prejudice, "to permit the plaintiffs to refile them in the state court, if they so choose."

On March 9, 1984, Coors filed this action in the Superior Court of the State of California for the County of Los Angeles naming as defendants Wallace and Sickler individually, and as coordinators of the Northern California Chapter of the AFL–CIO Coors Boycott Committee, the Northern California Chapter itself, and the AFL–CIO Coors Boycott Committee d/b/a the Northern California Chapter of AFL–CIO Coors Boycott Committee. The complaint alleges five claims. In the first four, Coors realleges against all of the defendants the state law tort claims that were dismissed without prejudice in *Coors I* (e.g., intentional interference with contractual relations). The fifth claim, unlike the first four, is directed only against the organizational defendants. This claim, for violation of the secondary boycott prohibitions of the N.L.R.A., is the same claim that Coors sought leave to allege in their amended complaint in *Coors I*. Defendants removed the action to federal court and now contend that since Coors could have litigated this secondary boycott claim in *Coors I*, they are barred by the doctrine of res judicata from bringing the claim in this action.

DISCUSSION

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Mottie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). *See also Costantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir.1982). Thus, there are two branches of the res judicata doctrine: a claim will be barred if there was a final judgment in an earlier action which actually decided the issue in question, and a claim will also be barred if there was a final judgment in an earlier action and that claim could have been brought in the earlier action. It is on the second branch of the res judicata doctrine that this Court rests its decision.

There are four elements which must be satisfied before res judicata acts as a bar: "(1) a valid, final judgment, (2) rendered on the merits, (3) a subsequent action involving the same parties or those in privity with them, (4) that is based on the same cause of action or claim." *Munoz v. County of Imperial*, 604 F.2d 1174, 1177 (9th Cir.1979) *quoting Hooker v. Klein*, 573 F.2d 1360, 1367 (9th Cir.1978). With respect to the finality of Judge Williams' decision, a judgment is final if no "further judicial action by the court rendering the judgment is required to determine the matter litigated." *Russell v. Commissioner*, 678 F.2d 782, 786 (9th Cir.1982). Thus,

Judge Williams' decision was a final judgment and the fact that Coors has appealed his decision does not affect the application of res judicata. 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4433 at 305 (1981).

■ Although Coors contends that res judicata could not apply to the AFL–CIO Coors Boycott Committee because it was not a named party in *Coors I,* the AFL–CIO Coors Boycott Committee and the Northern California Chapter are undeniably privies. Coors appellation of the AFL–CIO Coors Boycott Committee as "d/b/a/ Northern California Chapter of AFL–CIO Coors Boycott Committee," is virtually an admission that the Northern California Chapter and the AFL–CIO Coors Boycott Committee are privies. In addition, a nonparty may be bound if its interests are "so closely aligned" with a party's "as to be its virtual representative." *United States v. I.T.T. Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980). In this case, the interests of the Northern California Chapter and its parent AFL–CIO Coors Boycott Committee are identical, and the interests of the AFL–CIO Coors Boycott Committee were represented by the Northern California Chapter in *Coors I.* Thus, if Judge Williams' decision is res judicata as to the Northern California Chapter, it would be res judicata as to the AFL–CIO Coors Boycott Committee in this case.

Finally, *Coors I* was based on the same cause of action as the suit at bar. Both cases arose out of the Coors Day/KQED incident and Coors does not deny that the claims involve the same "transactional nucleus of facts." *Costantini,* 681 F.2d at 1202. Thus, the question to be resolved, and the principal focus of Coors' argument, is whether Judge Williams' decision in *Coors I* was rendered on the merits. Coors argues that because Judge Williams dismissed the state law claims with leave to "refile them in state court, if they so choose," *Coors I,* 115 L.R.R.M. at 3108, he did not dispose of the entire action on the merits. According to Coors, Judge Williams adjudicated only the antitrust claims on the merits, and therefore, his decision in *Coors I* cannot bar the secondary boycott claim here. Coors also argues, and this Court will consider, whether the fact that in *Coors I* Judge Williams denied the motion to allege a secondary boycott claim means that the claim could *not* have been brought in the first action, and thus cannot be barred here.

The Court concludes that res judicata should bar this claim for three principal reasons. First, the rationale and policy underlying the doctrine of res judicata support a decision to bar the secondary boycott claim in this case, particularly when viewed together with Judge Williams' thoughtful decision denying Coors' motion to amend. Second, the fact that Judge Williams specifically allowed Coors to refile the state claims in state court but did not expressly allow them to refile the secondary boycott claim strongly suggests that he intended the secondary boycott claim to be barred. Traditional res judicata rules allow a judge to so control the preclusive effects of his or her decisions. Finally, Coors does not offer, and this Court finds it impossible to satisfactorily explain why the existence of pendent state claims should mandate a different res judicata result than that which would be reached in a case involving solely federal claims.

### 1. *Res Judicata Policy*

"[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In this case, where the first court has specifically allowed plaintiffs to refile their state law claims, the judicial economy rationale is obviously of less importance.[1]

---

**1.** Judicial economy is of some importance, however. If the state court or this court were required to adjudicate the secondary boycott claim, the court would be required to spend considerable time and resources beyond that

However, the second and third goals of protecting parties from the "cost and vexation of multiple lawsuits" and encouraging reliance on judicial decisions are implicated in this case.

In *Coors I*, Judge Williams carefully considered Coors' motion for leave to amend their complaint to add the secondary boycott claim. With respect to Coors' claim that the question of whether the Northern California Chapter and Solidarity were labor organizations was an "entirely new matter" first raised by defendants in their motions for summary judgment, Judge Williams stated that:

> [t]his claim is preposterous; since at least December 8, 1982, plaintiffs have been on notice of the operative facts that comprise the approach which Solidarity and CBC have taken in opposition to the manner in which the plaintiffs deal with employees and union matters. The fact that plaintiffs failed to guage (sic) the legal effect of the defendants' claim to be "labor groups" until the defendants' memorandum of points and authorities discussing its ramifications was served on them is hardly exculpatory.

*Coors I*, 115 L.R.R.M. at 3108. This is precisely the rationale underlying the "could have been litigated" branch of res judicata, which is grounded in the policy of encouraging litigants to raise all of the claims arising out of one transaction in a single suit and precludes them from splitting causes of action. *See Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir. 1983). *Cf. Costantini*, 681 F.2d at 1202–03 (to avoid res judicata plaintiff must plead particular facts to establish that necessary information was concealed and that he or she attempted to discover the information which was allegedly concealed).

In addition, Judge Williams found that the defendants would be prejudiced by:

> the filing of an amended complaint which addresses events that occurred over six years ago, and delve into matter of intent and actions relevant to the completely new issue of whether either or both

which would be required to adjudicate the state

groups are "labor organizations", and whether their actions constituted an illicit "secondary boycott," because proper defense of these issues would require discovery beyond the reach on deposition of witnesses with faded memories, and exceed the remaining documents of the now defunct Local 366 available for inspection and production. This is adequate prejudice to defendants to justify denial of leave to plaintiffs to file an amended complaint, after their original complaint has been argued and submitted for summary judgment.

*Coors I*, 115 L.R.R.M. at 3108. Judge Williams' finding of prejudice to the defendants is exactly the type of finding which would support a court's decision to bar a claim so as to protect a party from the "cost and vexation of multiple lawsuits." *Allen*, 449 U.S. at 94, 101 S.Ct. at 415. In order to preserve the integrity of Judge Williams' decision as well as to prevent prejudice to the defendants, Coors should not be allowed to relitigate their secondary boycott claim here.

Although the Ninth Circuit has not ruled on a case exactly like this one, its decision in *Horner v. Ferron*, 362 F.2d 224 (9th Cir.1966) lends support to this Court's decision. In *Horner*, the court considered the res judicata effect of a district court's denial of leave to amend. The court noted that while the defendants had advanced several reasons why the motion to file the amended complaint should be denied, the district court did not state upon which of these grounds it had relied in its order of denial. "This being the case, that order cannot be taken as *res judicata* as to any of the grounds urged." *Id.* at 230. In *Coors I*, however, Judge Williams articulated clearly the reasons why he denied Coors' motion to amend, and his decision, therefore, should be res judicata. His findings of prejudice to the defendants and inexcusable delay force this Court to conclude that the secondary boycott claim should be barred. *See also*, Restatement (Second) of Judg-

law claims.

ments § 25 comment b (1982) ("[i]t is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and application to amend the complaint came too late."); *Nilsen*, 701 F.2d at 563 (5th Cir.1983) (rejecting a *per se* rule that a claim is not barred if plaintiff is unable to raise it in an earlier action because the judge denies leave to amend, and holding that the claim will be barred if failure to amend was caused by plaintiff's "unexplained dilatoriness.")[2]

### 2. *Res Judicata Control*

Traditional rules of res judicata allow judges to control the preclusive effects of their decisions. "A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion." Wright, Miller & Cooper, *supra* § 4413 at 105. *See also* Restatement of Judgments § 26(1)(b) and comment b (1982). Professors Wright, Miller and Cooper and the Restatement authors emphasize that leave to bring the second action must be expressly granted, and that if leave to bring the second action is not so granted, the claim will be barred.

In *Coors I,* Judge Williams explicitly gave Coors leave to refile the state law claims in state court, but he did not expressly give Coors leave to refile the secondary boycott claim in either state or federal court. The only possible inference to be drawn from, as well as the only possible legal effect of his silence with respect to the secondary boycott claim, is that he intended that claim to be barred. This inference is reinforced by Judge Williams' parting words in *Coors I,* "we very much believe that this cause of action is at heart founded in state law tort and contract theory...." *Coors I,* 115 L.R.R.M. at 3108.

### 3. *Federal Jurisdiction and Res Judicata*

Coors acknowledges that had Judge Williams dismissed the entire action in *Coors I* with prejudice, the secondary boycott claim would be barred. *See Federated,* 452 U.S. at 399 n. 3, 101 S.Ct. at 2428 n. 3. Similarly, if Judge Williams had exercised his discretion to retain jurisdiction of the pendent state claims, as he could have, *see Aydin Corp. v. Loral Corp.,* 718 F.2d 897 (9th Cir.1983), and had then ruled on those claims either on a motion for summary judgment or after trial, Coors would be barred from attempting to relitigate the secondary boycott claim. *See Nilson,* 701 F.2d at 556; *Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir.1982). In *Poe,* the district court denied plaintiff's motions for leave to amend and tried the remaining claims. After a final judgment was entered, plaintiff brought a second suit against the same defendants alleging the same claim which she had attempted to assert in the amended complaint in the earlier action. The district court granted defendants' motion for summary judgment on res judicata grounds and the Eighth Circuit affirmed. *Nilson* presented virtually the same procedural history as *Poe* except that the first case was decided on summary judgment. The Fifth Circuit also affirmed the district court's decision to bar a second case on res judicata grounds.[3]

---

**2.** Coors cites *McNellis v. First Federal Savings and Loan Assoc.,* 364 F.2d 251 (2d Cir.1966) in support of their position. However, *McNellis,* like *Horner,* 362 F.2d at 224, supports the Court's analysis in the case at bar. In *McNellis,* the court refused to give res judicata effect to a state court's decision to deny leave to amend because "a reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." *McNellis,* 364 F.2d at 257. As stated, there is no doubt as to what

Judge Williams decided in *Coors I,* and, as Judge Williams stated, the secondary boycott issue is not essential.

**3.** *But see Gregory v. Mitchell,* 634 F.2d 205 (5th Cir.1981). In *Gregory,* plaintiff filed a complaint in federal court alleging a federal cause of action and several pendent state claims. Plaintiff sought to amend his complaint to realign the parties thereby creating federal diversity jurisdiction. The court denied plaintiff's motion for leave to amend as untimely filed. The

Thus, the question posed here is whether a district court's discretionary decision not to exercise pendent jurisdiction should alter the effect of res judicata. This Court thinks not. In reaching this conclusion, however, the Court must note that the parties have not cited, and the Court has not found any cases which directly address this issue.

*Boccardo v. Safeway Stores, Inc.*, 134 Cal.App.3d 1037, 184 Cal.Rptr. 903 (Cal. App.1982), explores an analogous issue of federal jurisdiction. Plaintiffs were part of multidistrict litigation in which exclusively federal claims were alleged. The multidistrict panel dismissed the case for failure to state a claim upon which relief could be granted. Boccardo then made a motion for leave to file an amended complaint to allege a state claim. The motion was denied because it was untimely. Boccado then brought a second action in state court alleging the same state claim. After finding that the dismissal in the first case was a final judgment on the merits and that the federal and state claims were a single cause of action, the court held that if timely action by appellants would have "secured them access to a federal adjudication on the merits of their state claim", then the claim should be barred by res judicata. Because the court found that the multidistrict panel would have exercised pendent jurisdiction over the state claim had it been timely alleged, the court barred the subsequent suit.

In this case, the rationale of *Boccardo* is persuasive. Unlike the court in *Boccardo*, this Court does not need to speculate about whether timely action would have secured Coors' federal adjudication of their secondary boycott claim. The claim is federal, and had Judge Williams not found that Coors had delayed unreasonably in attempting to amend, and that granting leave

to amend would severely prejudice the defendants, he would have adjudicated the claim. Thus, res judicata should bar the secondary boycott claim in this suit.

### 4. *Conclusion*

■ The rationale for Judge Williams' decision denying Coors leave to plead the secondary boycott claim taken together with his express decision to allow *only* a second state tort and contract suit, convinces this Court that Judge Williams intended to bar a subsequent secondary boycott claim. In effect, what was actually and finally adjudicated in *Coors I* was the question of which claims can be brought against these defendants arising out of the Coors Day/KQED incident. Judge Williams' decision was clearly that Coors can only bring state tort and contract claims against these defendants. That decision should be respected and Coors' secondary boycott claim should be barred.

Therefore,

IT IS ORDERED that Coors' secondary boycott claim against the Northern California Chapter of the AFL–CIO Coors Boycott Committee and the AFL–CIO Coors Boycott Committee d/b/a/ the Northern California Chapter of AFL–CIO Coors Boycott Committee is barred by the doctrine of res judicata. Because the secondary boycott claim against these two defendants is now the only claim remaining before this Court, the action is dismissed.

---

court then granted summary judgment on plaintiff's federal claims and dismissed without prejudice the state claims. Plaintiff then refiled the pendent state claims and its federal diversity claim. The Fifth Circuit held that res judicata would not bar any of these claims because the first court's decision on these claims was not on the merits. However, to the extent that *Gregory* can be read to establish a *per se* rule that denial of leave to amend in an earlier action is never res judicata as to that claim in a later action, it was overruled or at least modified by the Fifth Circuit in *Nilson,* 701 F.2d at 556.