Filed 12/31/25  Irons v. Charter Communications CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SHANNON IRONS, Plaintiff and Appellant, v. CHARTER COMMUNICATIONS, INC., Defendant and Respondent. | B336763 (Los Angeles County Super. Ct. No. 23SMCV01882) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Shannon Irons, in pro. per., for Plaintiff and Appellant.

Seyfarth Shaw, Kristina M. Launey, and Michelle L. DuCharme for Defendant and Respondent.

Defendant Charter Communications, Inc. (Charter) denied plaintiff Shannon Irons's (Irons) application for Internet service because he had no physical address. Irons sued Charter alleging violations of the Fourteenth Amendment to the United States Constitution, the Unruh Civil Rights Act (Civ. Code, § 51 et seq. (Unruh Act)), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 (UCL)). The trial court sustained Charter's demurrer without leave to amend. We are asked to decide whether Irons can properly state constitutional and statutory causes of action for Charter's denial of service.

## I. BACKGROUND[1]

### A. *Irons's Federal Court Claims Against Charter*

In September 2022, Irons, for himself and "all others similarly situated," filed suit against Charter in federal district court. Irons averred he was "technically 'Homeless'" in that he did not have a "'fixed location' or Physical Address as a Residence." He alleged that when he applied for an Internet services contract with Charter, his application was "immediately" rejected because he could not provide a physical address.

Irons maintained the rejection constituted illegal discrimination. He asserted a cause of action for injunctive relief pursuant to Title 42, United States Code, section 1983 for violation of his constitutional rights under the Fourteenth Amendment and for damages and/or injunctive relief under the

---

[1] Our factual recitation is drawn from the operative complaint's allegations and public records judicially noticed by the trial court. (See generally *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 & fn. 1.)

2

Unruh Act and Title 42, United States Code, section 2000a. Charter moved to dismiss the complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted Charter's motion to dismiss with leave to amend, finding, among other things, that the Fourteenth Amendment cause of action was legally flawed because Charter was not alleged to be a state entity or a private entity acting under color of state law.

In his first amended complaint, which he brought solely on his own behalf, Irons deleted all references to the Fourteenth Amendment, dropped his Title 42, United States Code, section 2000a cause of action, reasserted his Unruh Act cause of action, and added causes of action for deprivation of rights pursuant to Title 18, United States Code, section 242 and the Federal Trade Commission Act (15 U.S.C. § 45 (FTCA)). Irons also added an allegation that he previously had an Internet service contract with Charter when he had a physical address.

The district court dismissed the federal causes of action with prejudice, declined to exercise supplemental jurisdiction over the Unruh Act cause of action, and "dismiss[ed] the case without prejudice such that [Irons] may pursue his state causes of action in state court if he so desires."

B. *Irons's State Court Complaint and Charter's Demurrer*

In May 2023, less than a week after the federal action was dismissed, Irons filed a complaint against Charter in state court. Based largely on the same facts as those alleged in his amended federal pleading, he asserted four causes of action: a due process claim arising under the Fourteenth Amendment; an unfair trade practices claim brought pursuant to the FTCA, a discrimination

3

claim based on the Unruh Act; and an unfair business practices claim under the UCL.

Charter demurred to the complaint. Charter maintained the Fourteenth Amendment cause of action in his state court complaint was barred by the doctrine of res judicata because he did not replead it in his amended complaint in Federal court. Similarly, Charter contended the FTCA cause of action was precluded because an identical claim was dismissed with prejudice in the federal case. Charter additionally argued Irons could not state a cause of action under the Unruh Act, because homelessness is not a protected class, and Irons lacked standing to bring his UCL cause of action because he had not suffered an injury in fact: he had not lost money or property as a result of the alleged unfair business practice.

Irons opposed the demurrer. Although he conceded his FTCA cause of action "need[ed] to be removed," Irons argued the demurrer should be overruled with respect to the other three claims. He maintained the Fourteenth Amendment cause of action was not barred by the doctrine of res judicata because "'privity' is different" in state court. Irons argued his Unruh Act cause of action was viable because the language of the statute could be read to include homelessness as a protected class. He contended further he had standing to allege a violation of the UCL because Charter's refusal to provide him with Internet service required him to "travel every day to a business which offers wireless services or WiFi whenever [he] needed to use the Internet," which "cost[ed] [him] money."

4

*C.    The Trial Court's Ruling*

In November 2023, the trial court held a hearing on Charter's demurrer.[2]  The court considered argument from the parties and sustained the demurrer without leave to amend.  The court found (1) the Fourteenth Amendment and FTCA causes of action were barred by the doctrine of res judicata, (2) the class of persons protected by the Unruh Act does not include those who are homeless (reasoning this classification was "impermissibly vague"), and (3) the UCL claim failed because Irons could not allege a cognizable loss of money or property.

## II.  DISCUSSION

All three of Irons's causes of action are legally infirm.[3] Irons's Fourteenth Amendment cause of action, which was

---

[2]    The appellate record does not include a reporter's transcript of the hearing.  The record also does not include a ruling expressly granting Charter's request for judicial notice, but we presume the request was granted because the trial court's written ruling refers to documents submitted in Charter's request for judicial notice, because the documents at issue were properly subject to judicial notice, and because the record contains no indication the request was denied (Evid. Code, § 456 ["If the trial court denies a request to take judicial notice of any matter, the court shall at the earliest practicable time so advise the parties and indicate for the record that it has denied the request"]; see also *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918-919.)

[3]    Consistent with his position in the trial court, Irons does not contend that the trial court erred in dismissing his FTCA cause of action.

5

previously raised and then abandoned in his federal court action and involved the same parties as those in his state court action, is barred by claim preclusion principles.[4]  Irons's Unruh Act discrimination cause of action fails because homelessness is not a statutorily protected class and his lack of a physical address is a factor Charter may consider in deciding whether he has the ability to pay for service provided.  Irons's UCL cause of action fails because he did not allege an economic loss arising out of his unconsummated business dealings with Charter.

## A. *Standard of Review*

We review an order sustaining a demurrer de novo. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.)  "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or

---

[4]  Although the parties use the term "res judicata" to describe the relevant basis for Charter's demurrer and the trial court's ruling, we will use the term "claim preclusion."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 ["we will follow the example of other courts and use the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel"]; accord, *Samara v. Matar* (2018) 5 Cal.5th 322, 326 ["We now refer to 'claim preclusion' rather than 'res judicata'"]; *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91 ["The claim preclusion doctrine, formerly called res judicata, 'prohibits a second suit between the same parties on the same cause of action'"].)

conclusions of fact or law.  We may also consider matters subject to judicial notice.  [Citation.]"  (*Yvanova*, *supra*, 62 Cal.4th at 924, fn. omitted.)  "'[T]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.'"  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490-1491.)

### B.     Irons's Fourteenth Amendment Cause of Action Is Barred by Claim Preclusion Doctrine

Claim preclusion "describes the preclusive effect of a final judgment on the merits."  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  It "acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties."  (*DKN Holdings*, *supra*, 61 Cal.4th at 824.)  "Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.  [Citations.]  If claim preclusion is established, it operates to bar relitigation of the claim altogether."  (*Ibid*.)  "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date."  (*Mycogen*, *supra*, at 897.)

Irons's Fourteenth Amendment cause of action was previously asserted against Charter in his initial pleading in the federal action.  Although the district court dismissed the initial complaint with leave to amend, Irons elected not to replead his Fourteenth Amendment cause of action in his amended pleading,

7

"effectively abandoning" that cause of action. (*First Resort, Inc. v. Herrera* (9th Cir. 2017) 860 F.3d 1263, 1274; accord, *Lacey v. Maricopa County* (9th Cir. 2012) 693 F.3d 896, 928 [holding that "claims [that are] voluntarily dismissed" are "waived if not repled" in an amended complaint].) When the district court subsequently dismissed with prejudice the federal causes of action asserted in Irons's amended pleading, it resulted in a judgment on the merits. (See, e.g., *Federated Department Stores, Inc. v. Moitie* (1981) 452 U.S. 394, 399, fn. 3; *Boccardo v. Safeway Stores, Inc.* (1982) 134 Cal.App.3d 1037, 1042.) That means Irons is precluded from re-asserting the claim in this action. (*Franceschi v. Franchise Tax. Bd.* (2016) 1 Cal.App.5th 247, 257-263 [holding state court action was barred by claim preclusion principles following dismissal of prior federal court action between same parties concerning the same primary right].)

### C. *Irons's Unruh Act Cause of Action Fails to State a Claim*

The Legislature enacted the Unruh Act in 1959 to secure equal access to public accommodations and prohibit discrimination by business establishments. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1150.) The Unruh Act provides, in pertinent part, that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd.

8

(b); see also *id.*, subd. (c) ["This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, sexual orientation, citizenship, primary language, or immigration status, or to persons regardless of their genetic information"].)

Though the list of protected classes in the Unruh Act is long, it does not extend to unhoused status. Precedent has held that an omission from the statutory list of protected classes is not necessarily determinative (*In re Cox* (1970) 3 Cal.3d 205, 212 [the discrimination identified in the Unruh Act's text is illustrative and the proscription against arbitrary discrimination extends beyond these enumerated classes]), but precedent also recognizes the Unruh Act does not prohibit all discrimination (see, e.g., *Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1145). Instead, the scope of Unruh Act has been construed as limited to forms of discrimination similar to the statutory characteristics— such as "'a person's geographical origin, physical attributes, and personal beliefs.'" (*Ibid.*, quoting *Harris*, *supra*, 52 Cal.3d at 1160; accord, *Semler v. General Electric Capital Corp.* (2011) 196 Cal.App.4th 1380, 1392 [a discrimination claim under the Unruh Act "must be based on a personal characteristic similar to those listed in the statute"].)

Irons's invocation of unhoused status is not so similar. Because Charter's requirement of a physical address has a rational (even if attenuated) connection to a customer's financial circumstances and creditworthiness, we cannot say it is a basis for discrimination sufficiently similar to the categories identified in the Unruh Act as prohibited. (*Harris*, *supra*, 52 Cal.3d at 1161

9

[holding business establishments may treat people differently based on their "financial status or capability"].) As *Harris* explains in terms equally applicable here: "Many . . . businesses, including lending institutions and retail and wholesale sellers, are in the position of extending money, goods, or services in exchange for promises to pay or repay in the future. They use minimum income policies as well as other financial criteria to make risk-oriented decisions regarding what customers to deal with and on what terms . . . . [¶] For these reasons, the economics of credit practices, whether those of landlords or other businesses, have traditionally been left to the guidance of market forces or to specific legislative and administrative action designed to address particular grievances. . . . In the absence of clear legislative direction, which the general antidiscrimination provisions of the Unruh Act do not provide, we are unwilling to engage in complex economic regulation under the guise of judicial decisionmaking." (*Id*. at 1167-1168.)

> D.      *Irons's UCL Cause of Action Fails to State a Claim*

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' ([Bus. & Prof. Code, ]§ 17200.) Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.)

As our Supreme Court has explained, standing under the UCL is limited to those individuals who had "'business dealings with a defendant and . . . lost money or property as a result of the defendant's unfair business practices.'" (*Kwikset, supra*, 51

10

Cal.4th at 321, quoting *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788; see also Bus. & Prof. Code, § 17204 ["a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" has standing under the UCL].) The plaintiff's injury must be "'an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"'" (*Kwikset*, *supra*, at 322.) The injury must "'affect the plaintiff in a personal and individual way'" (*id.* at 323), and it must be economic (*ibid.*).

As alleged in the operative complaint, Irons attempted to enter into a business arrangement with Charter but Charter declined because he lacked a physical address. Irons accordingly did not suffer any economic loss as a result of Charter's decision—Charter did not acquire any of Irons's money or property that could be restored to him through restitution.[5] Because Irons did not allege an economic loss, he failed to state a claim under the UCL.

---

[5] At most, Irons alleged he suffered only damages (i.e., the costs he incurred driving to locations where he could receive free Internet services as a result of Charter's denial of service), and damages are insufficient to confer UCL standing.

DISPOSITION

The judgment is affirmed.  In the interests of justice, all parties are to bear their own costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:



HOFFSTADT, P. J.



KIM (D.), J.